JARRARD MOTORS, INC., et al. *v.* JACKSON AUTO & SUPPLY CO., INC., et al.

No. 41233 November 2, 1959 115 So. 2d 309

*Robert G. Nichols, Jr., Creekmore & Beacham,* Jackson, for appellants.

*Crisler, Crisler & Bowling,* Jackson, for appellees.

Roberds, P. J.

The question for decision on this appeal is whether the chancery court had jurisdiction of the issues and parties involved in this litigation.

The bill was filed in this cause by Jackson Auto & Supply Co., Inc., a Mississippi corporation, domiciled at Jackson, and A. F. Lott, a resident of said city as an individual. In this opinion, we shall designate them "complainants" unless otherwise described.

Defendants to the bill are Jarrard Motors, Inc., Jarrard Motors, Parts and Service, Inc., and Jarrard Motors Standard Triumph Sales, Inc., all corporations under the laws of Florida, domiciled at Pensacola, and Wendell Jarrard, resident of Pensacola, as an individual. Said defendants are to be called "principal-defendants" when not otherwise described.

The bill charged that the principal-defendants were indebted to the complainants in a large sum as a result of a breach of a contract by the defendants under which the complainants had been constituted the dealers in Mississippi of foreign made automobiles of which the principal-defendants were the distributors.

These principal-defendants made special appearance in this cause and moved the court to dismiss the bill for lack of jurisdiction.

Complainants also made defendants in the bill four refinance corporations, all created under the laws of states other than Mississippi and domiciled in such states but doing business in the State of Mississippi.

Three of these finance companies, by their answers as garnishees, asserted that they were not indebted to, and did not have in their possession effects of, the principal-defendants. Complainants did not contest these answers and on complainants motion the bill was dismissed as to said three garnishees. They are out of this case.

Securities Investment Company of St. Louis, one of the garnishee-defendants, in its answer, averred that

it was not indebted to nor did it have in its possession the effects of any of the principal-defendants. It did assert, however, that it had purchased and discounted at its Pensacola office numerous conditional sales contracts covering equipment sold to others by Jarrard Motors, Inc., and that in the course of such business the sum of $17,384.51 had come into its possession as a reserve, as security, for the payment by Jarrard Motors, Inc. of all of its obligations which had been pledged to it to secure the prompt payment by Jarrard Motors, Inc. of the obligations connected with such refinance plans of operation. It further asserted that whether it was or would be obligated to pay said Jarrard Motors, Inc. any of said reserve would depend upon whether the amount owing to it, aggregating $370,176.25, should be fully repaid in the future. The answer then stated: "This defendant at the time of the service of the writ on it in this case and since which had no money or effects or property in any amount or of any nature or kind in its hands or under its control belonging to the debtor defendants Jarrard Motors Parts & Service, Inc., Jarrard Motors Standard Triumph Sales, Inc., or Wendell Jarrard, and knows of no person having any such effects of either of said defendants in his possession or under his control during said time."

Complainants did not contest any answer of a garnishee-defendant.

■■ ■ The first question presented is whether or not the foregoing garnishment proceeding vested in the chancery court jurisdiction in rem over the contingent fund held by Securities Investment Company of St. Louis. The chancellor held that it did. We think this was error for the reason that according to the uncontested answers the only person interested in said contingent fund was Jarrard Motors, Inc., and the chancellor dismissed the bill as to that corporation. He found that that corporation had been dissolved some four or five years prior

to the time of the trial of this cause. In his opinion he said: "On the Motion of the defendant, Jarrard Motors, Inc., it is the opinion of this Court that the undisputed proof presented on the Motion shows that this corporation has been dissolved and is not presently doing business, certainly in the State of Mississippi, therefore, said Motion should be and the same will be sustained as to this defendant, Jarrard Motors, Inc. only." No appeal from the foregoing adjudication was taken by the complainants. Jarrard Motors, Inc. is not before this Court. This renders it unnecessary for us to determine whether the obligation of Securities Investment Company of St. Louis is or is not in its nature such an obligation as can be the subject of garnishment.

We might add at this point that the bill should have been dismissed as to Wendell Jarrard, individually. There is no proof in this record showing that Wendell Jarrard was acting in his individual capacity in any of the matters involved in this litigation. All of the actions were taken in the name and on behalf of one or the other of the corporations.

This leaves for decision the main question in the case and that is whether or not Jarrard Motors, Parts and Service, Inc. and Jarrard Motors Standard Triumph Sales, Inc. were doing business in Mississippi under such circumstances as to vest in the chancery court jurisdiction over them. This involves a statement of the evidence bearing upon the question.

The defendants had no place of business in the State of Mississippi. They were domiciled at Pensacola, Florida. Purchases by complainants were made in Pensacola. The automobiles, parts, etc. were bought and paid for in Pensacola. However, it is shown that some of the automobiles were transported from Pensacola to Jackson in trucks of said defendants. They were bought and paid for and delivered at Pensacola. It is asserted by complainants that they were dealers in these foreign

made automobiles for some two months and that they were acting under a contract with these distributors. Jarrard, as a witness, admitted that the contract exhibited at the trial was in all essential respects the contract under which complainants operated at Jackson, and which complainants aver was broken by the Jarrards, causing complainants large damages. This contract is all-important on the.issue now being considered.

We will set out as briefly as we can the provisions of the contract. It provided that, within five days of each month the dealer should forward to Jarrard orders for automobiles for the ensuing month and a full record of sales of the preceding month; that Jarrard, as distributor, would fill the order promptly but failure to do so would not be a breach of the agreement; that loss from delay or failure to fill orders would be borne by complainants and the distributor would be held harmless from all damage arising from such failure or delay; that title to the automobiles would remain in distributor until receipt of the purchase price in cash; that until the checks, drafts, or other commercial paper should be converted into cash, the distributor had the right to retake and resell the automobiles; that the distributor had the right to establish the resale price at which dealer was to sell the automobiles, parts, etc., but the price would be such as to permit competitive bids for the products; that distributor, without notice and without incurring liability to the dealer or anyone else, could at any time and from time to time change the price of any of the products sold by dealer and this change of price would apply to all unfilled orders on hand at the date of the change; that. distributor, without notice or incurring liability, could discontinue the supply of any particular model of distributor's product, or supply products which have been revised,· modified, discontinued, altered or changed; that the dealer (the complainants)

unless directed by distributor, shall not alter, change or substitute any of the products sold by distributor; that distributor has the right to visit the dealer to inspect the premises and facilities and obtain information as to the sale of the products; that the dealer shall comply with the policies of distributor relating to sales, inventory, servicing, parts and record-keeping and furnish distributor such reports from time to time as distributor might require; that distributor has the right to inspect all of the books and records of the dealer; that the dealer would engage and maintain suitable personnel and organization adequate "in the opinion of the distributor" to perform properly the dealer's obligations; that dealer would maintain sales premises, properly equipped for repairs and servicing the automobiles, and an adequate supply of parts as might be directed by distributor; that dealer agrees to advertise the products as directed by distributor and withdraw any advertisement to which distributor might object; and that distributor may, at its option, terminate the agreement for cause by giving the dealer written notice.

The contract then sets out a number of grounds for terminating the agreement, and provided that the failure to comply with any provisions of this agreement within fifteen days after written notice would be grounds for termination of the relation.

From this it is clearly evident that Jarrard possessed almost absolute control over the method and manner of doing business by the dealer, in this case complainants in the bill.

Process for the Jarrards was served upon the Secretary of State of Mississippi and due publication was made for them.

Section 1437, Miss. Code of 1942 Annotated, Vol. 2 Recompiled, provides: "Any non-resident, person, firm, partnership, general or limited, or any corporation not qualified under the constitution and laws of this state

as to doing business herein, who shall do any business or perform any character of work or service in this state, shall, by the doing of such business or the performing of such work or services, be deemed to have appointed the secretary of state, or his successor, or successors in office, to be the true and lawful attorney or agent of such non-resident, upon whom process may be served in any action, accrued or accruing from the doing of such business or the performing of such work or service, or as an incident thereto by any such non-resident, or his, their or its agent, servant or employee. The doing of such business or the engaging in any such work or service in this state shall be deemed a signification of such non-resident's agreement, and equivalent to an appointment by, such non-resident of the secretary of state of the state of Mississippi, or his successor or successors in office, to be the true and lawful attorney or agent of such non-resident upon whom may be served all lawful process in any action or proceeding against any such non-resident for any cause of action which has accrued or may accrue in this state.''

Section 8072, Miss. Code of 1942 Annotated, Vol. 6 Recompiled, is as follows: ''Any person, partnership, association of persons or corporation engaged in the manufacture and/or distribution of motor vehicles, whether they are resident or nonresident of the State of Mississippi, transacting the business of manufacturing, distribution, or sale of motor vehicles or the parts or accessories thereof in the State of Mississippi, shall file in the office of the Secretary of State the form of a contract which is to be entered into between such manufacture with its agent, dealer or representative in this State and upon the approval by the Attorney-General of such contract, the contract shall become binding on all parties thereto, and in the event of a breach of said contract, the party injured or damaged by such breach may have recourse for the liquidation of his damages to a

board of arbitration and award as provided by Chapter 4 of the Mississippi Code of 1930 (Title 3, ch. 1, Code of 1942) and the failure to file such contract with the Secretary of State as provided herein and to secure the approval thereof of the Attorney-General of the State, shall render the contract unenforceable.''

Section 8073 of said Code is as follows: ''Any person, partnership, association of persons, or corporation damaged by the breach of such contract and desiring to take an appeal as provided by Chapter 4 of the Code of 1930 (Title 3, ch. 1, Code of 1942) from the findings of the board of arbitration and award may in each instance of such injury or damage recover all actual damages herein sustained in addition to the penalties herein provided and may maintain its, or his, action against one or more of the parties to said contract, its officers or agents.''

 Jarrard had not filed his contract with the Secretary of State. He had not complied with said sections. We are of the opinion that under the facts of this case, coupled with the fact that Sections 8072, 8073, were adopted specifically to meet the circumstances existing under dealer contracts, that said Jarrard Motors, Parts and Service, Inc., and Jarrard Motors Standard Triumph Sales, Inc., were doing business in the State of Mississippi in the sale and distribution of automobiles and automobile parts as provided in the contract which created the relationship of distributor and dealer in the territory covered by such contract.

Condon v. Snipes, 205 Miss. 306, 38 So. 2d 752; McGee, Petitioner v. International Life Insurance Company (Texas), 78 S. Ct. Rep. 199; Davis-Wood Lumber Co., Inc. v. Ladner, 210 Miss. 863, 50 So. 2d 615.

 It is recognized that each case must be decided upon its peculiar facts. No two cases are like. In the case of Davis-Wood Lumber Co., Inc. v. Ladner, supra, we said: ''Whether a corporation is doing busi-

ness in a state in the sense required for a process stat-
ute is a question dependent primarily upon the facts
and circumstances of each particular case. A less strict
interpretation of the phrase 'doing business' is applied
where there is an issue of whether a state court has
jurisdiction, than is applied where the statute involved
is one stating that a corporation must qualify before
doing business in order to have access to the courts of
the state. This distinction is proper because a strict
interpretation in favor of the corporation on a jurisdic-
tional issue would in many cases force the citizens of the
state to resort to another jurisdiction in order to main-
tain suits against foreign corporations as to matters
arising out of the transactions within the state. There
have been only a few Mississippi decisions involving this
situation. See Saxony Mills v. Wagoner, 1908, 94 Miss.
233, 47 So. 899, 23 L. R. A., N. S., 834; Gridley, Maxon
& Co. v. Turner, 1937, 179 Miss. 890, 176 So. 733, 177
So. 362; Lee v. Memphis Publishing Co., 1943, 195 Miss.
264, 14 So. 92d) 351, 152 A. L. R. 1428.''

That case also quotes from A. L. I., Restatement of
Conflict of Laws, Section 167, where it is said: ''doing
business is doing a series of similar acts for the purpose
complainants, had, to a large extent, complete control and
domination over the activities of complainants in the
sale, furnishing parts and repair of the automobiles.

As above-stated, Jarrard, under the contract with
complainants, had to, a large extent, complete con-
trol and domination over the activities of complainants
in the sale, furnishing parts and repair of the auto-
mobiles.

The case of McGee, Petitioner v. International
Life Insurance Company, supra, recognizes the increas-
ing trend of the courts to hold nonresidents liable locally
under the interlocking activities of enterprises in doing
business in the various states. That Court said: ''Look-

ing back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.'' That case also recognizes that the provisions of Sections 1437 and 8072, supra, do not violate the due process clause of the Constitution of the United States.

We are of the opinion that the chancery court had jurisdiction of Jarrard Motors, Parts and Service, Inc., and Jarrard Motors Standard Triumph Sales, Inc.

Affirmed in part, reversed in part, and remanded.

*Hall, Lee, Holmes* and *Ethridge, JJ.,* concur.