**Edwin A. WALKER, Appellant,**

v.

**Van H. SAVELL and the Associated Press, Appellees.**

**No. 20682.**

United States Court of Appeals
Fifth Circuit.

Aug. 11, 1964.

**537**

Joe W. Matthews, Dallas, Tex., John W. Capers, Jackson, Miss., Murray L. Williams, Water Valley, Miss., Clyde J. Watts, Looney, Watts, Looney, Nichols & Johnson, Oklahoma City, Okl., for appellant.

Earl T. Thomas, Jack W. Brand, Jackson, Miss., Fred B. Smith, Ripley, Miss., Robert G. Gillespie, Jr., Jackson, Miss., for the Associated Press, appellee, Wells, Thomas & Wells, Jackson, Miss., of counsel.

Before TUTTLE, Chief Judge, and POPE * and BROWN, Circuit Judges.

TUTTLE, Chief Judge.

General Walker appeals from an order of the District Court for the Northern District of Mississippi quashing the service of process and dismissing a complaint alleging libel on the ground that The Associated Press was not amenable to

---

* Of the Ninth Circuit, sitting by designation.

service under the provisions of Section 1437, Mississippi Code Annotated, 1942.[1]

The suit was originally filed by appellant Walker in the Circuit Court of Lafayette County, Mississippi, on October 22, 1962, against the appellee The Associated Press, and Van H. Savell, resident of Mississippi, who is alleged to have written the libelous article. Asserting that a separable controversy was alleged against Savell, arising under the laws of the United States, and in view of the non-resident status of Associated Press, the suit was removed to the United States District Court by petition filed on November 9, 1962. Thereafter, on November 14, The Associated Press filed its motion in the district court for the dismissal of the case as to it, or in lieu thereof, for the quashing of the process attempted to be served on it on the ground that it was not doing business in Mississippi so as to be subject to process therein. Thereafter, on November 19, appellant filed a motion to remand the action to the state court. The district court notified counsel that both of said motions would be heard on affidavits, counter-affidavits and briefs of counsel. On January 14, 1963, the court notified counsel that it would rule on the motion to dismiss before considering appellant's motion to remand. Three days thereafter, appellant served on The Associated Press and Savell long interrogatories designed to determine whether appellee was "doing business" in Mississippi. At appellant's request the district court deferred ruling on appellees' motion to dismiss until the interrogatories had been answered.

After the interrogatories had been answered, appellant moved the court, on March 20, 1963, to rule on the motion to remand prior to ruling on appellees' motion to dismiss. The court overruled this motion by order dated March 22, stating that no compelling reason existed for a reversal of the court's prior decision. The district court entered its order on May 10, 1963, quashing the process and dismissing the suit as to appellee.

The appellant here complains that the trial court erred in deciding appellees' motion to dismiss prior to passing on appellant's motion to remand the case to the state court. The appellant also complains that the court erred in not delaying the decision on the motion to dismiss pending further discovery procedures by the appellant. Appellant further complains that on the merits of the motion to quash the court erred in finding that The Associated Press was not "doing business" in Mississippi and dismissing the action as to it. Finally, appellant complains at length that the case was not removable to the district court in the first place, and that if the court had passed on the motion to remand first, it would have been compelled to remand the case to the state court. We deal with these points in the order in which they are set forth.

■ Where, as here, the attack on jurisdiction is as to the amenability of defendant to process rather than an attack on jurisdiction over the subject matter, we conclude that the federal court had a right to consider the motion to quash service and determine the jurisdictional question before remanding the case to the state court. If the appellee was not amenable to service of process this could properly be decided before the court took any further action on the motion of the appellant in the nature of a motion for remand. Block v. Block, 7 Cir., 196 F.2d 930. See also 1-A, Moore's Federal Practice, Sec. 0.169(1), pp. 1431–1434. There is nothing in our case of Weeks v. Fidelity & Casualty Co., 5 Cir., 218 F.2d 503, inconsistent with what we here hold. There the question was whether the court had jurisdiction over the subject matter rather than jurisdiction over the person of the defendant. We think the language of the Court of Appeals for the First Circuit in Garden Homes v. Mason,

1. That statute provides for service in the State of Mississippi against a foreign corporation and not registered to do business in that state, which actually is "doing business" in Mississippi.

1 Cir., 238 F.2d 651, is apposite here. There, being faced with a motion for remand to the state court and a motion by the defendant to dismiss for failure to effect proper service of process, the Court said:

"The only remaining question is one of procedure. The plaintiff-appellant argues that the case should never have been removed to federal court; and that therefore the first thing that the court below should have done was to dispose of plaintiff's motion to remand, instead of holding onto the case and ultimately dismissing the action for lack of personal jurisdiction over the defendant by reason of the alleged insufficient service of process. On the other hand, since plaintiff's motion to remand, and defendant's motion to dismiss because of insufficiency of service of process, each raises an issue as to the jurisdiction of the federal court, it may be that the district court should be free to dispose of the case upon whichever of the two grounds may appear to it to be the more convenient. See Block v. Block, 7 Cir., 1952, 196 F.2d 930."

We think here the trial court had the power to dispose of the motion to quash before first passing on the motion for remand. See also Phillips v. Manufacturers Trust Co., 9 Cir., 101 F.2d 723, a case decided under the former removal statute.

Since this case was, under the terms of the removal statute, unquestionably in the district court even though later subject to a proper motion for remand, if a suit could properly be pending anywhere, once it became apparent by the filing of the motion to quash service of process that there was a question raised by the defendant below whether it could properly be brought into court in Mississippi under any circumstances, it was proper for the trial court to examine into this question immediately and not subject the defendant, so protesting, to a further hearing on the motion to remand and possibly to a further hearing in a state court where it would then have to raise once again the question of personal jurisdiction. Once appellee lodged in the district court its challenge to the jurisdiction *in personam*, it was entirely appropriate for that court to inquire into, and resolve, that issue.

██ Dealing with the next alleged error, we conclude that the trial court did not abuse its discretion in refusing to delay decision on the motion to dismiss by the appellant. There was ample time after the filing by the appellee of the original affidavit protesting jurisdiction and after the response by appellee to the interrogatories for appellant to have proceeded to obtain further discovery, but nothing in this direction was done for two months after the answers to the interrogatories had been served. The motion filed by the appellant for the taking of depositions to contradict the claimed absence of jurisdiction over the appellees, did not purport to make any showing as to why the facts it sought to produce were unavailable to it by affidavit. We conclude that the trial court did not err in denying the motion.

We now come to the question on the merits whether the trial court erred in determining that The Associated Press was not "doing business" in the state of Mississippi within the contemplation of the statute authorizing service on foreign corporations not qualified within the state of Mississippi. This is a fact question. The following facts, as existing at the time of the attempted service, are undisputed:

The Associated Press is a mutual cooperative and non-profit association, formed to gather, collect and interchange with its members news and intelligence which, under the terms of its charter, it can neither sell nor traffic in such news items, but distributes them only to its members. The cost of these services are apportioned among the members in the form of assessments. In the state of Mississippi it had, at the critical point of time, five employees; four were newsmen whose duties were to gather news items and forward them to New Orleans,

Louisiana, where they were approved or circulated. Some of the news items were re-transmitted to Mississippi members of The Associated Press and were used within the state of Mississippi. The other employee is a maintenance man, whose duty was to repair equipment used by The Associated Press in disseminating its services in Mississippi and other states. It did not own or lease any office space in Mississippi; it did not have any bank account there; it did not advertise its service in Mississippi; it kept no corporate books or records in that state; it did not execute any contract in Mississippi, or have any officer or director resident there. It did not make available to its members or others in Mississippi any news items procured there until said items had been transmitted to offices outside the state of Mississippi for approval. It made no purchases of supplies in the state of Mississippi to be used in the gathering of news or otherwise within the state of Mississippi. Based on these facts the trial court found, by comparison with the Memphis Publishing Company case, as follows:

"* * * it is plain that the activities of the Associated Press in this state fall short of those carried on by The Commercial Appeal.

"The Associated Press representative is furnished an unmarked office in this state, whereas The Commercial Appeal has a news office in Jackson with the following sign on the door: 'The Commercial Appeal—Mississippi Office—News—Circulation—Advertising.' From this office news stories were sent to Memphis, Tennessee, where the newspaper was published. The Jackson office of the Associated Press serves as a conduit for their product, news items, to their individual subscribers within the state. Apparently, most, if not all, news stories are relayed through New Orleans for acceptance, rejection or editing there, before they are released to subscribers within the state, but some pictures may go directly from Jackson to the sub-scriber in Mississippi. The offices of The Commercial Appeal also acted as a conduit for news stories for the paper published in Memphis after the stories were accepted there.

"Both corporations maintain agents to gather the news within the state, as well as maintain solicitors for the sale of their respective products, although the activities of the Associated Press in this area are not as extensive as The Commercial Appeal, which maintained a large circulation and distribution force in Mississippi. Also, importantly, The Commercial Appeal did approximately one-third of its total subscription business within the boundaries of this state and the Associated Press does not even remotely approach this percentage of its business in Mississippi.

"To conclude, this court finds that the activities of the Associated Press in this state are less than and fall within the activities engaged in by The Commercial Appeal, as reflected in Lee."

■ The Erie rule requires that under this state of facts we apply the legal principles announced by the courts of Mississippi. Both parties here seem to consider that the correct application can be made only by considering what the Supreme Court of Mississippi has said in four important cases. These cases are Lee v. Memphis Publishing Co., 195 Miss. 264, 14 So.2d 351, 152 A.L.R. 1428; Davis-Wood Lumber Co. v. Ladner, 210 Miss. 863, 50 So.2d 615; Jarrard Motors, Inc. v. Jackson Auto Supply, 237 Miss. 660, 115 So.2d 309; Livestock Services, Inc. v. American Cyanamid, 244 Miss. 531, 142 So.2d 210, and Century Brick Co. v. Carroll, 247 Miss. 514, 153 So.2d 683. Both parties recognize the need to analyze all of these cases subsequent to Lee v. Memphis Publishing Co., supra, to determine what, if any, gloss has been put upon the Mississippi court's opinion in that case by the decision of the United States Supreme Court in 1945 of International Shoe Co. v. State of Washington,

326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, and subsequent cases.

The appellee here, as did the trial court, placed great reliance on the Memphis Publishing Company, case. This is understandable because that case, like the case before us, represented an effort by a plaintiff in the state court of Mississippi to sue a non-resident publishing company in a libel action by perfecting service as provided under the statute that is here controlling. The Mississippi Supreme Court held that the activities of the Memphis Publishing Company were not of a nature to constitute "doing business" within the state of Mississippi. Because of the points of similarity, and because the Supreme Court of Mississippi has never overruled the Memphis Publishing Company case, it is necessary to outline the facts that were there presented to the court and on which it made its decision that the foreign publishing company was not doing business in Mississippi. The publishing company was the publisher of the Commercial Appeal, a daily newspaper printed and published at Memphis, Tennessee. Service was had upon two local citizens, Land and Dunlap, and also on the Secretary of State. The corporation was the sole defendant. Land was an independent contractor who operated a truck or trucks in bringing newspapers from Memphis into Mississippi for delivery to a local distributor who purchased at wholesale price and resold the papers on his own account to newsboys, newsstands and individual purchasers in Euporia, Mississippi. He used all reasonable efforts to increase the number of retail purchasers of the paper. Dunlap was employed by the defendant publishing company at a salary of $35 per week as a contact man to ascertain and recommend suitable persons to become local distributors, but who was without authority or discretion to make any contract or obligate the employer. The corporation maintained and paid rent on an office in Jackson, on the door of which news office a sign was printed reading: "The Commercial Appeal—Mississippi Office—News—Circulation—Advertising." A Mississippi resident was in charge of the office as a reporter for the paper and he prepared and forwarded his news items to Memphis for acceptance or rejection there. He was paid a salary by the publishing company. He did not negotiate or execute contracts for the company. Any advertising that came from Mississippi was wholly unsolicited but was nevertheless forwarded by the Mississippi office to Memphis. There were other state district circulation managers besides Dunlap whose territories were in other parts of the state, who also sought to develop wholesale purchasers of The Commercial Appeal. The Commercial Appeal transported into the state by bus, trucks and train and distributed to subscribers nearly 40,000 daily papers, which constituted almost 30% of its total circulation. The company received from Mississippi nearly one-third of its total subscription revenue. It was on substantially this state of facts that the Supreme Court of Mississippi held that the Memphis Publishing Company was not doing business in the State of Mississippi within the purview of the Mississippi statute.

If we were to apply uncritically the law established by the Supreme Court of Mississippi in the Memphis Publishing Company case to the facts here found by the trial court, there could be no doubt concerning the correctness of the trial court's judgment to the effect that the conduct here by the non-resident appellee did not constitute doing business in the state of Mississippi within the purview of the Mississippi statute. This is true because it is clear that the actions of the Associated Press here do not extend beyond, either in scope or volume, those performed by the Memphis Publishing Company's representatives in the earlier case. The question for decision, however, is not what the Supreme Court of Mississippi has said in a case which is factually most in line with the one we have to decide, but what the court has said with respect to the legal principles to be followed in any case involving the concept of doing business, if intervening cases may

have indicated a trend away from the precedent that is most nearly similar on the facts. Thus, we consider the subsequent decisions of the Mississippi Supreme Court, even though none of them deals with an out of state publisher or person engaged in similar activities.

█ It must be borne in mind that we are dealing here with the construction of a Mississippi statute by the Mississippi Supreme Court. We are not concerned with the question whether a statute as construed by the state court violates the due process clause of the Fourteenth Amendment of the United States Constitution. This latter question is, of course, controlled by United States Supreme Court's decisions which show a continuing development from Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, to International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, and McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223.

The first of the cases to be considered by us in solving the Mississippi question is Davis-Wood Lumber Company v. Ladner, 210 Miss. 863, 50 So.2d 615. It is clear that the decision by the Mississippi Supreme Court in this case in no way weakens the pronouncements of the Court in the Memphis Publishing Company case. In fact, the Court in Davis-Wood Lumber Company cited Lee v. Memphis Publishing Company as one of the Mississippi cases controlling on the construction of this statute, 50 So.2d at 621. The only reference to the International Shoe Company case in Davis-Wood Lumber Company is in that part of the opinion dealing with the question whether the application of the state statute to contract as well as tort actions arising out of business or acts done within the state was in violation of the due process clause of the Fourteenth Amendment, an issue that is not present in the case before us.

. The second case for our consideration is Jarrard Motors, Inc. v. Jackson Auto & Supply Co., 237 Miss. 660, 115 So.2d 309. Here, it was absolutely clear that on the facts before the court the Supreme Court of Mississippi was justified in saying:

"[I]t is clearly evident that Jarrard [the non-resident corporation] possessed almost absolute control over the method and manner of doing business by the dealer [the local dealer whose entire dealership was carried on under contract with the non-resident] * * * "

Moreover there was available to the local plaintiff in the Jarrard case a separate section dealing with distribution of motor vehicles requiring the filing of contracts between out of state manufacturers and domestic persons in the office of the Secretary of State providing certain procedural remedies in the event of breach of such contract. The Court then held:

"We are of the opinion that under the facts of this case, coupled with the fact that Sections 8072, 8073, were adopted specifically to meet the circumstances existing under dealer contracts, that said Jarrard Motors, Parts and Service, Inc., and Jarrard Motors Standard Triumph Sales, Inc., were doing business in the State of Mississippi * * * "

The Court then cited several cases, including Davis-Wood Lumber Company, Inc. v. Ladner, supra, and quoted from the Davis-Wood Lumber Company case language which cited Lee v. Memphis Publishing Company as authority. While the Court thereafter quoted from McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, a case frequently cited as having the same import as International Shoe, the Court gave no indication that it intended to reverse or modify its earlier decision in the Memphis Publishing Company case.

We next come to a consideration of the third of the cases mentioned above that both parties consider necessary for a determination of the law in the present situation. This is Livestock Services, Inc. v. American Cyanamid, 244 Miss. 531, 142 So.2d 210. In its opinion in this

case the Supreme Court of Mississippi referred neither to Memphis Publishing Company nor International Shoe Company. It held that the trial court had correctly decided that the non-resident American Cyanamid Company was not doing business in the state of Mississippi, although it had ten salesmen continually working there taking orders for the product of the out of state manufacturer, made demonstrations in the state, and had its representatives go to the State Experiment Station for testing of the Company's products, all within the state of Mississippi. Clearly these acts would have satisfied the requirements of doing business under the formulation announced in International Shoe and McGee v. International Life Insurance Company, supra. However, the Court harked back to Snipes v. Commercial and Industrial Bank, 225 Miss. 345, 83 So.2d 179, to find its own formulation of the law to be applied in the state of Mississippi. Thus it was clear that the Court had not, at least at the time of the American Cyanamid Company decision, decided to supersede its own announced requirements by the more modern or liberal trend discussed in the United States Supreme Court's decisions.

Finally, we come to the case of Century Brick Company v. Carroll, 247 Miss. 514, 153 So.2d 683. In this case, which dealt with the activities of a non-resident owner of a patented plaster technique, which sold to a local party in Mississippi a franchise license to use and promote the patented process, the Supreme Court equated the factual situation to that in the Jarrard case just discussed. After stating, "[a] controlling factor was that Jarrard 'had, to a large extent, complete control and domination over the activities of complainants in the sale, furnishing parts and repair of the automobiles'" the Court in the Century Brick case said:

"Jarrard is substantially similar to the present case." Thus it is seen that Century Brick Company would be subject to Mississippi court jurisdiction on any theory of doing business in the state, announced by the Mississippi courts, including the standards announced in the Memphis Publishing Company case.

While the Court mentioned International Shoe Company v. Washington, supra, and the succeeding cases of Travelers Health Association v. Commonwealth of Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154, and McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, as well as Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, which noted some limitations on the "minimal contacts" doctrine, it is plain that the Supreme Court of Mississippi continued to apply its own concept of the Mississippi law. It is not apparent from anything said in that case, or in any of the other cases discussed, that Mississippi would construe its statute as permitting service on a non-resident corporation whose only activities in the state are a part of an interstate transaction. Moreover, in at least one, Livestock Services, Inc., supra, one of the most recent cases, it failed to apply the statute to a foreign corporation which carried on some local activities.

Although we here apply the Mississippi law as we find it in the decisions of the courts of that State, we feel we should call attention to the case decided by this Court following Davis-Wood Lumber Company v. Ladner, supra. This is the case of Mississippi Wood Preserving Co. v. Rothschild, 5 Cir., 201 F.2d 233. There this Court commented at length on the Mississippi court's opinion in Davis-Wood. However, in deciding the case presented to it, this Court found that the foreign corporation was not "doing business," even though its contacts with Mississippi were much more than "minimal" and were such as would clearly meet the requirements set in International Shoe. Thus, there is no suggestion in this Court's decision in Mississippi Wood Preserving that the broadened scope of International Shoe had been adopted by the State court as the Mississippi standard.

Moreover, although we look to all of the cases dealing with the subject

matter to ascertain what the Mississippi rule is with respect to doing business, we think there is peculiar significance in the application of this rule to foreign corporations or parties that may be clothed with some of the constitutional protections dealing with freedom of the press. It may well be the policy of the state of Mississippi to require a much stricter showing of the doing of business within that state by a foreign newspaper like the Memphis Commercial Appeal, or a foreign news service like the Associated Press, before it is to be held amenable to local service in a libel suit than would be the case in a suit against an ordinary commercial corporation. We think there is reason for such a distinction because of the inherent danger or threat to the free exercise of the right of freedom of the press if jurisdiction in every state can be inferred from minimal contacts. Cf. Sullivan v. New York Times, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686. In deciding the Memphis Publishing Company case the Mississippi court relied heavily on newspaper and similar precedents. Although not articulated in the opinion, it may well be that the court was reluctant to find that the Memphis Publishing Company was doing business in the state of Mississippi because of the court's recognition of the threat such a ruling would pose to freedom of the press. Be that as it may, we conclude that in applying the principle announced in that decision, the district court did not commit error.

We come finally to the contention that the case was improperly removed to the district court and that if the court had passed upon a motion to remand first it would have been impelled to remand the case to the state court. This point is not before us. The trial court having decided to pass on the motion to dismiss first at a time that the court had jurisdiction over the case by reason of the removal in accordance with the statutory requirements, it never reached the question of the correctness of the removal to the federal court. This is merely an effort by the appellant to restate its first argument, to-wit, that the trial court should have passed on the order on the motion to remand before passing on the motion to dismiss. We have already dealt with this in the first section of the opinion, and hold that the trial court did not err in considering and determining the motion to dismiss first.

The judgment is affirmed.