SCHWEGMANN BROS. GIANT SUPER MARKETS, INC., Plaintiff,

v.

PHARMACY REPORTS, INC., Charles Turbyville, Herbert Carlson, Wallace Werble, Jr., Cole Palmer Werble, Thomas Christopher Cerullo, Defendants.

Civ. A. No. 79–4640.

United States District Court, E. D. Louisiana.

March 7, 1980.

C. T. Williams, Jr., Stephen M. Pizzo, New Orleans, La., for plaintiff.

Ashton R. Hardy, Metairie, La., Warren M. Schultz, Jr., New Orleans, La., Raymond D. McMurray, Peter S. Reichertz, Washington, D. C., for defendants.

CASSIBRY, District Judge:

ON MOTIONS TO SET ORDER IN WHICH MOTIONS WILL BE HEARD, TO REMAND, AND TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND QUASH SERVICE OF PROCESS

Plaintiff Schwegmann Bros. Giant Super Markets, Inc. ("Schwegmann Bros.") filed this suit in the 24th Judicial District Court for the Parish of Jefferson, Louisiana against defendants Pharmacy Reports, Inc., Charles Turbyville, Herbert Carlson, Wallace Werble, Jr., Cole Palmer Werble, and Thomas Christopher Cerullo. Plaintiff's suit sounds in defamation and slander as a result of the dissemination of information contained in a publication entitled "Weekly Pharmacy Reports", also known as "The Green Sheet". Defendant Cerullo is alleged to have provided to the other defendants the information that is the basis of the article. The nonresident defendants, Pharmacy Reports, Inc., Charles Turbyville, Herbert Carlson, Wallace Werble, Jr. and Cole Palmer Werble, received service of process by certified mail. They removed to this court pursuant to 28 U.S.C. § 1441 on the grounds of diversity of citizenship (28 U.S.C. § 1332).

After removal, defendants promptly filed a motion to dismiss for lack of personal jurisdiction and to quash service of process. Plaintiff replied by filing its own motion to remand back to state court. Plaintiff also filed a motion to order that the motion to remand be heard before the motion to dismiss.

## I

It is within my discretion whether to decide the motion to dismiss prior to the motion to remand, or vice versa. *See Walker v. Savell*, 335 F.2d 536 (5th Cir. 1964). The *Walker* case, in fact, involved facts virtually identical to those of the present case. In *Walker*, plaintiff, alleging he was libeled, filed suit in a Mississippi state court against the Associated Press and an individual. Defendants removed to federal court claiming diversity of citizenship, and filed a motion to quash service of process or to dismiss for lack of personal jurisdiction. Plaintiff filed a motion to remand and asked the court to hear it before the motion to dismiss. The court refused, heard the motion to dismiss first, and dismissed the complaint. On appeal, the Fifth Circuit stated:

> Since this case was, under the terms of the removal statute, unquestionably in the district court even though later subject to a proper motion for remand, if a suit could properly be pending anywhere, once it became apparent by the filing of the motion to quash service of process

that there was a question raised by the defendant below whether it could properly be brought into court in Mississippi under any circumstances, it was proper for the trial court to examine into this question immediately and not subject the defendant, so protesting, to a further hearing on the motion to remand and possibly to a further hearing in a state court where it would then have to raise once again the question of personal jurisdiction. Once appellee lodged in the district court its challenge to the jurisdiction *in personam*, it was entirely appropriate for that court to inquire into, and resolve, that issue.

355 F.2d at 539.

■ I find it convenient in this case, like the court in *Walker*, to hear the motion to dismiss first. Defendants have answered plaintiff's interrogatories and filed extensive affidavits addressing the issue of their contacts with the State of Louisiana. Both parties have briefed the issues sufficiently. If I hear the motion to remand first, a motion to dismiss for lack of personal jurisdiction will eventually be heard anyway, whether in this court or in state court, depending on my ruling on the remand. On the other hand, if I decide that personal jurisdiction is lacking, the motion to remand will be moot.

■ Plaintiff's contention that the issue of personal jurisdiction under the Louisiana long-arm statute (La. Rev. Stat. Ann. § 13:3201 (West Supp. 1979)) should be heard by a Louisiana state court ignores the comment of the revision commission that the statute purports to grant jurisdiction to the full extent allowed by due process. *See* Comments of Louisiana State Law Institute —1964 to La. Rev. Stat. Ann. § 13:3201 (West 1976); *cf. Buckley v. New York Times Co.*, 338 F.2d 470 (5th Cir. 1964) (former La. long-arm statute intended the limits of due process under then-existing precedents). Because the due process inquiry is a question of federal constitutionality, *see International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), this is an appropriate forum.

## II

■ Plaintiff does not dispute the contention that there are insufficient contacts to subject the individual defendants (except defendant Cerullo, who has not joined in the motions pending before the court) to the court's jurisdiction. The motion to quash service of process and to dismiss for lack of *in personam* jurisdiction over defendants Charles Turbyville, Herbert Carlson, Wallace Werble, Jr., and Cole Palmer Werble is granted.

Defendant Pharmacy Reports, Inc. has submitted affidavits on its behalf executed by the publisher and by the circulation manager of "Weekly Pharmacy Reports". The affidavits purport to show that Pharmacy Reports, Inc. has no contacts with the State of Louisiana, e. g., it has no office, employees, or agent for service of process in Louisiana, is not qualified to do business in the state, is a District of Columbia corporation, is a subsidiary of a Delaware corporation (F–D–C Reports, Inc., not named in this suit), pays no taxes in Louisiana, and maintains no assets here. The only contact defendant does have with the state is that it mails copies of its publication, including the allegedly offending publication, to several subscribers in the state. Defendant maintains that the number of reports mailed to Louisiana is insufficient to constitute a "continuous and systematic" course of business necessary to exercise jurisdiction in light of the first amendment's overlay on the fourteenth amendment's due process standard. *See New York Times Co. v. Connor*, 365 F.2d 567 (5th Cir. 1966). Plaintiff does not dispute the information contained in defendant's affidavits but contends that the number of defendant's publications mailed into Louisiana establishes sufficient minimum contacts for the court to exercise jurisdiction under the Louisiana long-arm statute and the dictates of due process of law.

■ The first principle in cases of this sort is that the mere circulation of a periodical through the mails to subscribers consti-

tutes neither doing business nor engaging in a business activity sufficient to exercise jurisdiction over the publishing company. *Buckley v. New York Times Co.*, 338 F.2d 470 (5th Cir. 1964). But a publisher cannot automatically insulate itself from suit in a distant forum merely by extinguishing all contact with the state save the sale or distribution of its publication. *See Curtis Publishing Co. v. Golino*, 383 F.2d 586 (5th Cir. 1967). Yet, it is not the number of published materials entering the state that determines whether it is in line with "traditional notions of fair play and substantial justice" to exercise jurisdiction. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940). Rather than absolute quantity, a court must examine the "quality and nature" of the publisher's activities to determine whether they are "continuous and systematic" or evidence merely a "casual presence" in the state. *See Buckley*, 338 F.2d at 475.

The Fifth Circuit has made it clear that fundamental differences between an essentially local newspaper and a magazine depending on nationwide appeal become crucial in a fairness inquiry that involves periodicals. *Curtis Publishing Co. v. Golino*, 383 F.2d 586, 590–91 (5th Cir. 1967). The *Golino* court reasoned:

> The existence of a newspaper, no matter how popular, depends primarily upon circulation in the vicinity of its publication. Circulation in other areas may well be welcomed, but it is not critical to the newspaper's continued existence. Circulation beyond the vicinity of publication can be characterized as "passive" in that it is a product of the publication's excellence rather than of a business effort of active solicitation in all areas of the nation. Such is not the case with a publisher of a national magazine. The primary function of such a business is to sell as many magazines as possible in every state of the union, and to that end the corporation actively directs its business. The publication itself, unlike a newspaper, is not prepared primarily for local consump-

tion, but rather for a nationwide audience.

*Golino*, 383 F.2d at 580 (footnotes omitted).

The affidavits submitted on behalf of Pharmacy Reports, Inc. indicate that it considers "Weekly Pharmacy Reports" to be dependent on nationwide appeal. In fact, defendant has attempted to minimize its dependence on its Louisiana subscriptions by comparing them with its national circulation. Adapting the *Golino* court's reasoning to the instant case, then,

> [I]t would not comport with notions of fair play and substantial justice to allow a business enterprise, whose overriding business purpose is maximum exploitation of the national market, to be free from suit as a matter of law in all states but that of publication simply because physical contacts with the other states [have] been reduced to a minimum. The legal principle urged upon us by [defendant] would allow a publisher, fully aware of the strong possibility of resulting legal action, to print libelous matters directed at persons in distant localities, yet remain free from suit in such localities in spite of the pecuniary benefits gained in that very jurisdiction where it asserts it cannot be held legally accountable. A rule of law allowing such a condition would clearly not conform to the purposes behind the 'minimum contacts' due process requirement. Resolution of the due process issue in the field of extra-territorial jurisdiction involves consideration of many factors. Circulation is admittedly one of these factors when dealing with a national publisher, [and it may be] sufficient in itself to satisfy the constitutional test.

383 F.2d at 591 (footnotes omitted).

A comparison of *The New York Times* cases (*Buckley v. New York Times Co.*, 338 F.2d 470 (5th Cir. 1964) and *New York Times Co. v. Connor*, 365 F.2d 567 (5th Cir. 1966)) with *The Saturday Evening Post* case (*Golino v. Curtis Publishing Co.*, 383 F.2d 586 (5th Cir. 1967)) provides a useful guide for proper application of the due

process standard. In each case, virtually the only contact with the forum state was the published material circulated in the state, other than insignificant reporting activity[1] and solicitation of advertising revenue. In *Buckley, The Times'* circulation in Louisiana was 391 daily newspapers and 1,784 Sunday papers, and in *Connor,* the circulation in Alabama was 395 copies daily and 2,455 on Sunday. In *Golino,* the circulation of *The Saturday Evening Post* was found to average about 60,000 copies for each of its approximately 45 issues per year. The Fifth Circuit refused to find sufficient contact to exercise jurisdiction over *The Times* but upheld jurisdiction over *The Post.*

Defendant in the instant case, Pharmacy Reports, Inc., argues strenuously that its circulation of 77 copies of "Weekly Pharmacy Reports" in Louisiana per week not only does not approach the 60,000 copies found sufficient in *Golino,* it does not even touch the approximately 400 copies per day found insufficient in *The New York Times* cases. But, again, the significant factor in these cases was not the aggregate number of copies distributed in the state but the fraction of the total circulation of the publication represented by the distributed copies. Only a percentage figure accurately reflects the relationship that the defendant has established with the proposed forum state; it indicates whether a publisher's activity in the state is significant enough to its business to make it fair to force the publisher to defend a suit there that arises out of the activity.

In *The New York Times* cases, the 400 daily copies circulated in the state constituted only a minute fraction of 1% of the total daily circulation of 650,000, as did the roughly 2,000 Sunday newspapers out of a total circulation of 1,300,000. The *Buckley* court expressly found that *The Times* did less than 1/1000th of 1% of its business in Louisiana. 338 F.2d at 473–74. The Fifth Circuit found these figures too insignificant

to constitute anything but a "casual presence" in the respective states.

In contrast, *The Post's* circulation in Louisiana amounted to just about a full 1% of its total circulation. The Fifth Circuit reasoned that this figure slightly underestimated the percentage of total national circulation attributable to Louisiana, because *The Post's* total circulation included international sales. The *Golino* court accepted an estimate of the population of Louisiana as about 1.5% of the total United States population, 383 F.2d at 591, and, implying that Louisiana is an area that is relatively poor economically, where percentage of sales can be expected to lag slightly behind population figures, concluded:

> [I]t can hardly be doubted but that [the publisher] considered the nearly 1% circulation in Louisiana to be a significant portion of its business—as much as could be reasonably anticipated from the Louisiana market. Circulation is the heart of the magazine publication business. It is to the end of increasing circulation that all other facets of the business are directed. It is also the activity from which the alleged injuries in a libel action flow. *Where, as here, the solicited circulation of a corporation's publications account for a relatively significant portion of the corporation's revenue, notions of fair play and substantial justice support the right of the state to require the corporation to answer non-frivolous claims arising out of its contacts with the state, even though it has managed to reduce its physical presence in the state to a minimum.*

383 F.2d at 591–92 (emphasis added).

■ Defendant's affidavits reveal that its total circulation nationwide is 4,394. Thus, the "mere" 77 copies sent to Louisiana constitutes about 1.75% of its total national circulation. Recent figures indicate that the population of Louisiana now constitutes approximately 1.8% of the total popu-

---

1. Insignificant only for purposes of establishing a continuous presence in the state. The particular reporting activity that manifests itself as

the alleged libel will of course be of great significance to the lawsuit, whether it originates in the proposed forum state or not.

**612**

lation of the United States.[2] It is clear on the face of these figures that Pharmacy Reports, Inc. must consider its circulation in Louisiana "to be a significant portion of its business—as much as [can] be reasonably anticipated from the Louisiana market." Defendant's publication more closely resembling a national magazine than a local newspaper, and its sales figures in Louisiana so closely approximating Louisiana's percentage of the national population, this case must be treated under the ruling in *Golino* rather than those of *The New York Times* cases.

The only remaining hurdle is the possible impact of the first amendment on the due process standard. Language in *Connor* indicates concern for the chill that might result if a publisher is subjected to libel suits in distant forums where its publications are fortuitously sold. *See New York Times Co. v. Connor*, 365 F.2d at 572–73. The *Golino* court considered these concerns in the context of a publisher of a national magazine and held that the possibility of chilling the exercise of freedom of the press was minimal. *See Curtis Publishing Co. v. Golino*, 383 F.2d at 592. Nevertheless, the *Golino* court specifically noted the difference between the "business of a well-known, highly successful national magazine such as the Post" and the small magazine publisher. The court stated:

> *Connor* and the instant case should not be read as drawing a clear, unwavering line between newspapers and national magazines. *Connor* does not categorically protect all newspapers whenever or wherever sued outside of the state of publication. Nor does the instant case require that like weight be given the first amendment considerations whenever a magazine publisher is the defendant. There are certainly situations in which the first amendment factor could be decisive or inconsequential, regardless of which type of publisher is involved. Clearly, the small magazine publisher who does not seek a nation-wide audience

but who is sued on the basis of the inevitable but unintentional circulation in distant states will present an entirely different controversy for solution by the courts. As in the instant case, final resolution will depend upon the weighing of many factors, including those touching upon first amendment protection as they relate to a determination of the fundamental fairness of any given forum's assertion of jurisdiction.

383 F.2d at 592 n.13.

I do not believe that the first amendment presents an obstacle to the exercise of jurisdiction in this case. The *Connor* court was faced with the specter of a plaintiff's attempting to predicate jurisdiction in a libel action on the fortuitous sale of one newspaper in a distant state. Its concerns were directed to the resulting "risk of large judgments at the hands of local juries incensed by the out-of-state newspaper's coverage of local events." 365 F.2d at 572. As seen above, the *Golino* court was also concerned about the potential exposure that would be created if the small magazine publisher that intends its audience to be mainly local could be sued anywhere its magazine was sold, through a chain of distribution over which it may not have control. While Pharmacy Reports, Inc. is clearly not the large-scale publishing concern Curtis Publishing Company was, it obviously does intend to sell its magazines, if not in every state, at least in Louisiana. Defendant's affidavits show that it sends the 77 copies of "Weekly Pharmacy Reports" directly into the state to subscription customers. This is plainly not a case in which a defendant is surprised with suit in a state in which it never would have suspected its product would be sold, or in which any other tie with the state is purely the product of chance. *Cf. World-Wide Volkswagen v. Woodson*, —— U.S. ——, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (out-of-state car dealership made no direct sales to the forum state; receipt of benefits from the state merely collateral; only con-

**2.** This number was derived from figures taken from the 1979 Rand-McNally *Commercial Atlas and Marketing Guide*, which estimates the pop-

ulation of the United States at 219,265,700 and of Louisiana at 3,971,700, as of January 1, 1979.

tact was the accident in the state involving an automobile sold by defendant; violated due process to exercise *in personam* jurisdiction in product liability action). Defendant has not only "purposefully avail[ed] itself of the privilege of conducting activities within the forum State," *Hanson v. Denckla*, 357 U.S. 237, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), it has done so in a "continuous and systematic" fashion. *Buckley*, 338 F.2d at 475.

It does concern me to some extent that defendant is here exposed to a million dollar libel suit in a state in which it derives only $1,000 in revenue and in which its parent corporation earns only about $6,000 from all of its publications. The Fifth Circuit's first amendment fears are apparently based on the assumption that, "due to the lack of substantial revenues derived from sales in distant forums, a strong possibility of lawsuits will have a chilling effect upon the desire of [a publisher] to promote the distribution of publications expressing views unpopular in such forums." *Golino*, 383 F.2d at 592. Unfortunately, following such reasoning to its logical conclusion would in this case virtually immunize the defendant from the law of libel, *see Buckley v. New York Post Corp.*, 373 F.2d 175, 182–84 (2d Cir. 1967); Comment, *Long-Arm Jurisdiction Over Publishers: To Chill a Mocking Word*, 67 Colum. L. Rev. 342, 355–64 (1967), because its total revenue must be on the order of only $60,000 (extrapolating from its 1.7% Louisiana circulation and the $1,000 derived therefrom). I do not think the burden of forcing defendant to defend suit here will give it pause to question whether to distribute its publication in Louisiana in the future; the danger is that the magnitude of plaintiff's threatened recovery may very well cause it to seriously question whether to publish at all in the future, a chill the first amendment does not protect against.

I strongly doubt whether defendant can be expected to be subject to numerous lawsuits in *any* jurisdiction for printing "Weekly Pharmacy Reports", due to its character as essentially a professional newsletter. So I think the possibility of first amendment chill is remote. Moreover, as Judge Friendly noted in the Second Circuit's *New York Post* case,

> Like other enterprises that inflict damage in the course of performing a service highly useful to the public, such as providers of food or shelter or manufacturers of drugs designed to ease or prolong life, [newspapers, magazines, and broadcasters] must pay the freight; and injured persons should not be relegated to forums so distant as to make collection of their claims difficult or impossible unless strong policy considerations demand.

*Buckley v. New York Post Corp.*, 373 F.2d 175, 182 (2d Cir. 1967).

These considerations are weighty in this case, in which a local company claims injury from an allegedly libelous article circulated across the nation. It is certainly no more inconvenient for Pharmacy Reports, Inc. to defend suit in Louisiana than it would be for plaintiff to attempt to prove its case in the District of Columbia. *See Golino*, 383 F.2d at 593–94.

For all of these reasons, I hold that it will not violate either the Louisiana long-arm statute or the principles of due process of law to assert *in personam* jurisdiction over defendant Pharmacy Reports, Inc. Defendant does not seriously dispute whether service of process in this case was otherwise inadequate. Defendant's motions to dismiss and to quash service of process are, therefore, denied.

### III

Because defendant's motion to dismiss for lack of personal jurisdiction is denied, I now turn to plaintiff's motion to remand. The remaining named defendants are Pharmacy Reports, Inc. and Thomas C. Cerullo. Defendant Cerullo is alleged to be a citizen of the State of Louisiana, the same state as plaintiff, Schwegmann Bros. Since the basis of the removal was diversity of citizenship, plaintiff not surprisingly claims that the case was improperly removed from state court. *See* 28 U.S.C. § 1441 and §§ 1332(a)(1) and (c) (1976). Defendant

Pharmacy Reports, Inc. argues that Cerullo should not be considered a proper party to the suit because, (a) he was joined solely for the purpose of defeating diversity; (b) plaintiff has not alleged a proper cause of action against him; and (c) he was not served with process when the case was removed.

■ Defendant's first contention is not in and of itself a proper defense to a motion to remand. Joinder of a defendant is not fraudulent simply because the motive is to defeat diversity. *Parks v. New York Times Co.*, 308 F.2d 474 (5th Cir. 1962), *cert. denied*, 376 U.S. 949, 84 S.Ct. 964, 11 L.Ed.2d 969 (1964). If plaintiff's allegations make out a good faith claim under state law, no matter how doubtful, defendant's presence will defeat diversity and prevent removal. *Id.*; *see Tedder v. F.M.C. Corp.*, 590 F.2d 115 (5th Cir. 1979) (allegations in the complaint show no arguably reasonable basis for predicting recovery under state law; fraudulent claim will not defeat diversity and prevent removal); 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3723, at 611–18 (1976).

■ The allegations in plaintiff's complaint appear to state a proper cause of action under Louisiana law. The essential elements of a defamation cause of action in Louisiana are: (1) defamatory words; (2) publication, that is, communication to some person other than the one defamed; (3) falsity; (4) malice, actual or implied; and (5) resulting injury. *Harper v. Jeans*, 353 So.2d 1093 (La. App. 1978); *Carter v. Catfish Cabin*, 316 So.2d 517 (La. App. 1975).

Cerullo is alleged to have provided the information to Pharmacy Reports, Inc. that formed the basis of the allegedly libelous article. Plaintiff does allege that Cerullo sent a letter to Charles Turbyville, an employee of Pharmacy Reports, Inc., complaining that he was misquoted in the offending article. Defendant argues that this shows that all Cerullo did was to "provide information", which was subsequently misquoted into a defamatory article, acts for which Cerullo cannot be held legally responsible. But by pleading the existence of the letter, plaintiff has not necessarily admitted the truth of the statements made therein. Plaintiff evidently intended to show that Cerullo admits that he made *some* statement to his co-defendant that was made the basis of the article. It is entirely possible to read plaintiff's complaint to aver that proof at trial will show that the information provided by Cerullo to Pharmacy Reports, Inc. was defamatory, a slander in addition to any later libel.

■ Defendant's final contention also lacks merit. Defendant's theory is that Cerullo's presence as a named party will not prevent removal under 28 U.S.C. Section 1441(b) because he was not served with process when the case was removed.[3] Unfortunately, defendant overlooks the fact that any case removed to federal court must also comply with 28 U.S.C. Section 1441(a), i. e., the suit must be originally cognizable in a federal district court—only then will the provisions of Section 1441(b) become operative. In other words, the provision in Section 1441(b) does not qualify the requirement of Section 1441(a) that there must be complete diversity between the named opposing parties; it merely adds the requirement in removal cases based on diversity that the joined and served defendants cannot include one from the state in which the action is brought. *Clarence E. Morris, Inc. v. Vitek*, 412 F.2d 1174 (9th Cir. 1969) (per Hufstedler, J.). *Contra, Robertson v. Nye*, 275 F.Supp. 497 (W.D. Okl.

---

3. The removal statute provides in pertinent part:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest *properly joined and served* as defendants is a citizen of the State in which such action is brought.

28 U.S.C. § 1441 (1976) (emphasis added).

1967). Since Cerullo was properly named as a party to the state court suit, his presence destroys diversity under 28 U.S.C. § 1332, and the case is not properly removed under 28 U.S.C. § 1441. Plaintiff's motion to remand must, therefore, be granted. 28 U.S.C. § 1447(c) (1976).

There seems to be substantial question as to the vehicle by which defendant Pharmacy Reports, Inc. can appeal my denial of its motion to dismiss. Ordinarily it would not be a final order appealable under 28 U.S.C. Section 1291, and it is not an appealable interlocutory order under 28 U.S.C. Section 1292. 28 U.S.C. §§ 1291, 1292 (1976). Because I have granted plaintiff's motion to remand, however, my denial of defendant's motion becomes as a practical matter unreviewable. *See* 28 U.S.C. § 1447(d) (1976) (remand is not reviewable). I think, therefore, that defendant can appeal as of right under Section 1291. *Cf. Southeast Mortgage Co. v. Mullins*, 514 F.2d 747 (5th Cir. 1975) (order of dismissal resulting in remand is reviewable as a final order because functionally non-reviewable otherwise). Nevertheless, in the interest of ensuring that defendant's right to appeal this important question concerning personal jurisdiction is preserved, I will certify it for interlocutory appeal to the Fifth Circuit Court of Appeals. 28 U.S.C. § 1292(b) (1976).