IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 96-30481
Summary Calendar
_____

HUGH FOSTER,

Plaintiff-Appellant,

versus

INTERNATIONAL BUSINESS MACHINES
CORPORATION; DENNY SLAYTON,

Defendants-Appellees.

_____

Appeal from the United States District Court for the
Eastern District of Louisiana
(95-CV-3456-N)
_____
November 21, 1996
Before GARWOOD, JOLLY, and DENNIS, Circuit Judges.

PER CURIAM:[*]

In this removed, diversity-based employment case, the plaintiff, Hugh Foster, appeals the district court's dismissal of his case under Rule 12(b)(6) on grounds that it was prescribed by the applicable state statute of limitation.

We review Rule 12(b)(6) motions de novo. Cinel v. Connick, 15 F.3d 1338, 1341 (5th Cir.), cert. denied, 115 S.Ct. 189, 130

_____

[*]Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

L.Ed.2d 122 (1994).  For the reasons detailed below, the district court is affirmed.

I

Mr. Foster contends that in 1993 and 1994 his employer, IBM, discriminated against him on the basis of race.  This discrimination is alleged to have culminated on September 22, 1994, when IBM notified Foster he was fired.  Foster's last day of work with IBM, however, was November 30, 1994.  He filed this lawsuit on September 29, 1995.

The district court held that Louisiana's one-year statute of limitations barred the complaint, determining that the cause of action arose on September 22, 1994, the date Foster learned of his dismissal.  In contrast, Foster contends that the cause of action arose on his last day of work, November 30, 1994, and his complaint, therefore, was filed in a timely manner.  Thus, the narrow question on appeal is whether a cause of action for race discrimination under La. Rev. Stat. § 23:1006, § 51:2242, and § 51:2256 arises when an employee has notice of termination or on the last day of employment.

II

A

In diversity cases, such as this one, federal courts are obliged to follow the state high court's determination of

substantive state law issues.  When the high court has not spoken to a particular issue, the federal court must attempt to decide how the state high court would rule on the issue.  <u>Erie R. Co. v. Tompkins,</u> 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); <u>Walker v. Savell</u>, 335 F.2d 536, 540-42 (5th Cir. 1964).

Although decisions of state appellate courts are influential, they are not binding upon us when we find that the state's highest court would decide differently.  <u>West v. American Telephone & Telegraph Co.</u>, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940).

B

In <u>Williams v. Conoco</u>, we concluded that although the Louisiana Supreme Court had not resolved the issue, a cause of action for employment discrimination cases runs from the date the employee has notice of an adverse action.  <u>Williams v. Conoco, Inc.</u>, 860 F.2d 1306 (5th Cir. 1988).  In 1992, the Louisiana Appellate Court ruled in a state race discrimination case that the prescriptive period begins to run at the time of notice, confirming the federal courts' position.  <u>Winbush v. Normal Life of Louisiana</u>, 599 So.2d 489 (La. App. 3 Cir. 1992).  Therefore, at least as of 1992, the question of when a cause of action arises in an employment discrimination case appeared settled.

The plaintiff, however, contends that the recent opinion of Harris v. Home Savings and Loan Assoc. changes everything.  Harris v. Home Savings and Loan Assoc., 663 So.2d 92, 95 (La. App. 3 Cir.); writ denied 664 So.2d 405 (1995).  The court in Harris held that under the facts before it, a claim for age discrimination began on the date of firing and not from the date of notification.  Id. at 94.  The plaintiff argues that Harris overruled Winbush.  We find that Harris is distinguishable from both Winbush, and from Foster's claim.

Harris involved unusual facts:  After working thirty-six years for his employer, Home Savings and Loan notified Harris he was going to lose his job.  Rather than simply firing Harris, his employer gave him two options.  He could continue with the company for three years at a reduced salary, or he could keep his current salary for one additional year, but lose certain other benefits.  Harris chose to continue to work for a single year.  He filed his age discrimination complaint a few months after finally leaving the company, but over a year after learning that he would eventually lose his job.

The Harris Court was concerned that in such circumstances, an employee may be forced to choose between continuing to work during a "phase out" period and filing a well-grounded employment discrimination suit.  The court noted: "a claimant's cause of

-4-

action may very well be undermined, if not completely thwarted, by a wily employer who misleads the claimant into believing that ameliorative measures may be taken within a year of notification to prevent a termination and then does nothing to annul the decision to terminate."  Id. at 95-96.

The  Harris Court's particular take on Delaware State College v. Ricks is illuminating.  Delaware State College v. Ricks, 449 U.S. 250, 101 S.Ct 498, 66 L.Ed.2d 431 (1980).  Ricks, a college teacher who had been denied tenure, claimed that he had been discriminated against based on his national origin.  Denial of tenure was the functional equivalence of being fired. Nevertheless, Ricks was permitted to work for more than a year, before being forced to leave.  The Supreme Court found that the "unlawful employment practice" occurred when Ricks learned that tenure was denied; the ultimate termination of employment at the end of the following academic year was a consequence of the denial of tenure.  Therefore, the Court held, the cause of action arose when Ricks learned of the denial of tenure.

The Harris Court contrasted Ricks with Harris, noting that "Once tenure was denied in Ricks, the damage was done.  The intent to terminate Mr. Harris as evidenced by the October, 1992 notice could easily have been annulled before his actual termination." Harris, 663 So.2d at 95.  Therefore, the decision in Harris, the

Louisiana court reasoned, does not apply to circumstances such as those in Ricks where a decision to fire an employee is unequivocally communicated and little or no hope for a reprieve exists.

In contrast, the letter notifying Foster that he was fired was unequivocal. It noted Foster's employment was to end permanently on November 30, 1994. Contrary to Foster's assertions, nothing in the letter gave hope of another position in the company being available. The letter notes that "[w]hile internal placement activities may be undertaken, opportunities for placement within IBM are expected to be very limited. You do not have the option of assuming a job that would displace another IBM regular employee." Therefore, whatever force Harris may have, it is simply not applicable to the case before us.

The district court correctly concluded that in the circumstances before us, Foster's cause of action arose when he was notified that he had been fired. Therefore, the district court opinion is

A F F I R M E D.