ARNETT *et al. v.* CAROL C. & FRED R. SMITH, INC., *et al.*

(Division A. June 13, 1932. Suggestion of Error Sustained Jan. 23, 1933.)

[145 So. 638. No. 30018.]

Blair & Anderson, of Tupelo, for appellant.

Powell, Harper & Jiggitts, of Jackson, for appellant.

56

Leftwich & Tubb, of Aberdeen, for appellees.

**Cook, J.,** delivered the opinion of the court.

After a careful reconsideration of this cause in the light of the suggestion of error filed therein, we have reached the conclusion that there is error in the former opinion as filed and reported in 142 So. 478, and therefore that opinion is withdrawn, and the judgment entered in pursuance thereof is set aside, and the following is adopted as the opinion of the court:

The appellants, the father, mother, brothers, and sisters of Alphus Arnett, citizens of the state of Alabama, instituted this suit in the circuit court of Lee county, Mississippi, against Carol C. and Fred R. Smith, individually, and Carol C. & Fred R. Smith, Inc., an Alabama corporation, for damages for the alleged wrongful death of the said Alphus Arnett, who was killed while he was employed by the said Alabama corporation in the construction of a bridge over the Tombigbee river in Itawamba county, Mississippi.

Carol C. & Fred R. Smith, Inc., a foreign corporation having its domicile at Montgomery, in the state of Alabama, secured a contract for the construction of a bridge across the Tombigbee river in Itawamba county, Mississippi, and, while engaged in the construction of said bridge, Alphus Arnett, an employee of said corporation, was killed. During the time the bridge was under construction, Carol C. Smith, vice president of said corporation, who was in charge of the construction of the bridge, resided with his family at Tupelo, in Lee county, Mississippi. The bridge was completed and accepted by the state highway department on September 1, 1931, and on September 12th thereafter the said Carol C. Smith gave up the house he had been renting in Tupelo and moved his family back to his home in Alabama. He then returned to Corinth, Mississippi, near which place the corporation of which he was vice president was engaged in construction work in Shiloh National Park. Just a few

days before Carol C. Smith moved from Tupelo, he was sued in the court of a justice of the peace at Tupelo; this suit being returnable on September 18, 1931. On September 15, 1931, the declaration in the case at bar was filed, and summons for the said Carol C. Smith individually, and Carol C. & Fred R. Smith, Inc., was issued and delivered to the sheriff of Lee county. On September 18, 1931, in response to the justice court summons which was returnable on that date, and also in response to a notice from his attorney that the suit against him in the justice court would be tried on that date, the said Carol C. Smith returned to Tupelo for the sole purpose of defending the suit against him, and while there summons in the suit which had been previously filed in the circuit court, was served on him individually, and as vice president of Carol C. & Fred R. Smith, Inc.

At the following November, 1931, term of the circuit court of Lee county, the defendants filed a combined motion to quash the process and plea in abatement, setting forth in detail the facts in reference to the residence of the parties, the filing of the suits in Lee county, and the circumstances under which service of summons was had on the said Carol C. Smith, individually, and as president of the corporation, and praying that the process be quashed, and the suit dismissed, on the ground that the said Carol C. Smith as an individual, and as vice president of the said corporation, was immune from service of process in said suit while he was attending the justice of the peace court at Tupelo, on September 18, 1931, as a witness and suitor, in response to compulsory process; there being no connection, in so far as the subject-matter was concerned, between the case then before the circuit court and the justice court case. This motion to quash and plea in abatement was sustained, and the cause was finally dismissed; and, from the judgment entered, this appeal was prosecuted.

The assignments of error present for decisions two questions, which, as stated by counsel, are as follows: First. "Whether or not Carol C. Smith, as an individual, and as vice-president of Carol C. and Fred R. Smith, Inc., was immune from service of process in the case at bar, while attending justice of the peace court at Tupelo, on September 18, 1931, as a witness and suitor, in response to compulsory process, there being no connection between the two cases (that is, the case at bar and the case, the trial of which he was attending) in so far as subject-matter is concerned?" Second. "Whether or not, by appearing and moving to quash the process in the case at bar and pleading in abatement thereto, he waived, individually, and for the corporation, his and its territorial jurisdiction?"

Upon the first proposition, as stated above, no Mississippi case is cited by counsel, and we have found none which is of any aid in reaching a conclusion; but, in other jurisdictions, there is a great array of authorities upon the point. It is conceded by counsel for the appellant that the great weight of authority supports the rule announced in 50 C. J. 548, that "suitors, in attendance in a court outside of the territorial jurisdiction of their residence, are immune from service of civil process, while attending court, and for a reasonable time before and after, in going to court and in returning to their homes." But it is contended that the minority rule announced in a limited number of jurisdictions, that "nonresident suitors are under no circumstances entitled to immunity from service of civil process," is supported by the better reasoning and should be adopted by this court.

In support of the majority rule as announced in Corpus Juris, supra, there are cited many cases from the supreme court of the United States and other federal courts, and also cases from twenty-six state courts, while cases from other jurisdictions are cited which adopt this general rule in part.

The rule is based upon considerations of public policy and the due administration of justice, and the reasons therefor are fully and well stated in many decisions of courts of other jurisdictions, from some of which we quote. In Stewart v. Ramsay, 242 U. S. 128, 37 S. Ct. 44, 45, 61 L. Ed. 192, Judge Pitney, speaking for the court, said: "The true rule, well founded in reason and sustained by the greater weight of authority, is that suitors, as well as witnesses, coming from another state or jurisdiction, are exempt from the service of civil process while in attendance upon court, and during a reasonable time in coming and going. A leading authority in the state courts is Halsey v. Stewart, 4 N. J. Law, 366, decided in the New Jersey supreme court nearly one hundred years ago, upon the following reasoning: 'Courts of justice ought everywhere to be open, accessible, free from interruption, and to cast a perfect protection around every man who necessarily approaches them. The citizen in every claim of right which he exhibits, and every defense which he is obliged to make, should be permitted to approach them, not only without subjecting himself to evil, but even free from the fear of molestation or hindrance. He should also be enabled to procure, without difficulty, the attendance of all such persons as are necessary to manifest his rights. Now, this great object in the administration of justice would in a variety of ways be obstructed if parties and witnesses were liable to be served with process while actually attending the court. It is often matter of great importance to the citizen, to prevent the institution and prosecution of a suit in any court, at a distance from his home and his means of defense; and the fear that a suit may be commenced there by summons will as effectually prevent his approach as if a capias might be served upon him. This is especially the case with citizens of neighboring states, to whom the power which the court possesses of compelling attendance cannot reach.' . . . 'The privilege which is asserted

here is the privilege of the court, rather than of the defendant. It is founded in the necessities of the judicial administration, which would be often embarrassed, and sometimes interrupted, if the suitor might be vexed with process while attending upon the court for the protection of his rights, or the witness while attending to testify. Witnesses would be chary of coming within our jurisdiction, and would be exposed to dangerous influences, if they might be punished with a lawsuit for displeasing parties by their testimony; and even parties in interest, whether on the record or not, might be deterred from the rightfully fearless assertion of a claim or the rightfully fearless assertion of a defense, if they were liable to be visited on the instant with writs from the defeated party.' "

In Diamond v. Earle, 217 Mass. 499, 105 N. E. 363, 51 L. R. A. (N. S.) 1178, Ann. Cas. 1915D, p. 984, the court said: "The rule has been stated generally that suitors and witnesses from a foreign jurisdiction are exempt from service of civil process while attending court and for such reasonable time before and after as may enable them to come from and return to their home. This statement is broad enough to include the parties plaintiff as well as defendants and witnesses. The rule is an ancient one. The reason upon which it rests is that justice requires the attendance of witnesses cognizant of material facts, and hence that no unreasonable obstacles ought to be thrown in the way of their freely coming into court to give oral testimony."

The reasons for the rule are well stated in the case of Sofge v. Lowe, 131 Tenn. 626, 176 S. W. 106, 107, L. R. A. 1916A, p. 734, where the court said: "The privilege of immunity from service rests upon grounds of public policy, and of such policy as it relates to a matter of supreme importance—the administration of justice. In order that causes may be fully heard and a just result reached, and that an orderly and unhampered administra-

tion of justice may be assured, the law has announced the rule of exemption. If parties to a pending case, or their witnesses, are liable to be thus sued, they may be intimidated and prevented from complying with the foreign court's mandate, if actually summoned or subpœnaed, or from attending voluntàrily as is their privilege. It is against public policy to permit them to be deterred by fear of being subjected to suit while attending, or so going or returning. . . . The courts of this state will see to it that their processes are not used to thus embarrass the administration of justice in a sister state, and we shall expect the courts of other states to rule in reciprocation. Thus, by a species of comity, a common end will be served. It may be that this cannot be demanded of us or of other courts, or asked to be extended except by way of that courtesy which is really comity. Reasons of convenience, expediency, and public interest prompt us to announce this doctrine for our state. A liberal interpretation in favor of the privilege is manifested in the authorities, state and federal, and we deem our ruling to be in accord with that trend.''

In Long v. Hawken, 114 Md. 234, 79 A. 190, 191, 42 L. R. A. (N. S.) 1101, the Maryland Court of Appeals, in discussing the tendency of the courts, and the reason for the exemption, said: '' '. . . The tendency, however, of the courts in this country is to enlarge the privilege and to afford full protection to suitors and witnesses from all forms of process of a civil nature during their attendance before any judicial tribunal and for a reasonable time in going and returning.' The reason for the exemption is placed by the New York Court of Appeals and by Judge Cooley in the Michigan Case [Mitchell v. Huron, 53 Mich. 541, 19 N. W. 176] on the ground of public policy and the due administration of justice. The general rule as announced by this court in Bolgiano Case [73 Md. 132, 20 A. 788, 25 Am. St. Rep. 582] that a nonresident party defendant was also exempt from the

service of process has been approved by a long line of well-considered cases in other jurisdictions, and is supported by the great weight of authority in the states and federal courts." *

Upon reason and authority, the same rule applies where a resident of a state attends court as a litigant in a county other than that of his residence. In 50 C. J. 550, it is said that, "In jurisdictions where the majority rule respecting immunity of suitors in attendance in a court outside⁰ of the territorial jurisdiction of their residence prevails, it has generally been held that a resident of a state who attends court as a litigant in a county other than that of his residence is privileged from the service of summons in an action brought in that county."

In Hicks v. Besuchet, 7 N. D. 429, 75 N. W. 793, 794, 66 Am. St. Rep. 665, a resident of the state attended court as a litigant and witness in a county other than that of his residence, and while there was served with summons in an action brought in the latter county. He moved to dismiss the action on the ground of irregular service of the summons on him; and, in passing upon the action of the court below on this motion, the supreme court of North Dakota said: "The action should have been dismissed then and there upon the grounds set out in both affidavits. The later authorities are explicit that the immunity from the service of process upon a nonresident of the county, who resides in the state, is enjoyed equally with a nonresident of the state who in good faith comes within the state to attend upon the trial of an action, whether such nonresident is a litigant or a witness. In this case the defendant, at the time he was served with process, was in the county of Barnes in both capacities."

In the case of Powers v. Arkadelphia Lumber Co., 61 Ark. 504, 33 S. W. 842, 54 Am. St. Rep. 276, it was held that "A resident of the state, while attending the taking of depositions in a cause to which he is a party in a coun-

ty not of his residence, is privileged from service of summons in another action there pending.'' And, in response to the contention made therein, that the privilege of a defendant should be restricted to cases of arrest, and should not be extended to nonresident suitors in ordinary cases temporarily present in the state and county, or in the county, for the mere purpose of attending a suit to which he is a party, unless his presence has been procured by some artifice, trick, or fraud by the plaintiff or his counsel, the court held that the great weight of authority is against that view of the subject, and that the privilege properly rests on the basis of a sound public policy. In support of this view, the Arkansas court cites numerous authorities, and particularly the well-reasoned case of Andrews v. Lembeck, 46 Ohio St. 40, 18 N. E. 483, 15 Am. St. Rep. 547. For further collection of authorities bearing on the subject, we refer to the notes found in 61 L. Ed. 193, Ann. Cas. 1915D, 985, 25 L. R. A. 721, 24 L. R. A. (N. S.) 276, and 42 L. R. A. (N. S.) 1101.

It appears to us that the reasoning of this vast array of cases, which announce the rule that suitors in attendance in a court outside of the territorial jurisdiction of their residence are immune from service of civil process, is sound, and should prevail in this state, and therefore we hold that the process served on the appellee was invalid.

The appellant, however, contends that, ''regardless of whether or not the process served upon Carol C. Smith, and Carol C. and Fred R. Smith, Inc., was defective or void, nevertheless the said Carol C. Smith and Carol C. and Fred R. Smith, Inc., are now within the jurisdiction of the circuit court of Lee county by virtue of the fact that they have entered their appearance in said court by filing the motion to quash the process.'' This contention is based upon section 2999, Code of 1930, which provides that, ''where the summons or citation, or the service

thereof, is quashed on motion of the defendant, the case may be continued for the term, but defendant shall be deemed to have entered his appearance to the succeeding term of the court." In the former opinion filed in this cause we upheld this contention on the theory that the circuit court of Lee county had territorial jurisdiction of the suit, and in so holding we failed to give proper consideration to certain provisions of our statutes fixing the venue of causes of action, and particularly section 4166, Code of 1930. This section provides that: "Any corporation claiming existence under the laws of any other state or of any other country foreign to the United States, found doing business in this state, shall be subject to suit here to the same extent that corporations of this state are, whether the cause of action accrued in this state or not."

The injury complained of in this suit occurred in Itawamba county, in this state, but at the time the suit was filed in Lee county the corporation was not "found doing business in this state." By virtue of the said section 4166, foreign corporations are subject to suit in this state only when "found doing business in the state," and therefore as against the appellant corporation the circuit court of Lee county was without territorial jurisdiction of the cause of action. This being true, it did not, by pleading the want of jurisdiction in abatement of the cause, waive such want of jurisdiction. In the case of Turner v. Williams, 162 Miss. 258, 139 So. 606, 607, it was held that, where a court has jurisdiction of the subject-matter, and suit is brought in the proper venue, the appearance of the defendant in the cause for any purpose is an appearance for all purposes, and is a waiver of the want of process on the defendant, but the court there said: "This principle, however, has nothing to do with the right of a defendant to have a cause dismissed where the court is without jurisdiction of the subject-

matter, or where there is a lack of territorial jurisdiction. In such case the defendant has the right to plead, in abatement of the cause, the want of jurisdiction; his appearance for the purpose is not a limited appearance. It is general; nevertheless it does not waive such want of jurisdiction. Mississippi Cent. Railroad Co. v. Calhoun, 140 Miss. 289, 105 So. 519; Heggie v. Stone, 70 Miss. 39, 12 So. 253; and Cain v. Simpson, 53 Miss. 521, were all cases where the court was without territorial jurisdiction. The court held in those cases that the defendant could appear and object to the jurisdiction of the court without waiving the jurisdiction.''

In the case of Batson & Hatten Lbr. Co. v. McDowell, 159 Miss. 322, 131 So. 880, 881, by virtue of the express provisions of the statute fixing the venue of actions against domestic corporations, the venue of the action was in either Pearl River or Harrison counties. The suit was filed in Forrest county, and the defendant moved to quash the process, and also sought, by proper plea, to abate the action upon the ground of want of jurisdiction in the circuit court of Forrest county. The court there said that section 2999, Code of 1930, has nothing whatever to do with the jurisdiction of the subject-matter, nor the venue of the action, but is addressed alone to the jurisdiction of the person of the defendant. In further discussion of the point, the court said: ''By a motion to quash, whether such motion be sustained or overruled, the defendant waives any question of jurisdiction over his person; but he does not waive jurisdiction over the subject-matter or the venue of the action. By filing a motion to quash the process, the court gets jurisdiction of the person of the defendant as effectually as if he had been legally served with process. By such a motion the defendant is not prejudiced as to his other rights; he is simply in court to the same extent and with all the rights that he would have as the result of being legally served

with process. He can raise, in the proper time and order, the questions of jurisdiction of the subject-matter and of venue, and each and all other questions which he would be entitled to raise if he had been brought in by process, instead of by motion to quash process.''

Since a foreign corporation is only suable in this state when it is ''found doing business'' in this state, the circuit court of Lee county had no territorial jurisdiction of the cause of action, and by its appearance to quash the process and abate the action the appellee corporation did not waive the lack of jurisdiction. Upon another ground we have reached the conclusion that the corporation, by its appearance to assert its immunity from suit in Lee county, did not waive its immunity, and this ground likewise entitled the appellee Carol C. Smith, upon whom, as an individual, the process was served, to have the suit abated as to him.

Suitors' immunity from service of civil process while in attendance in a court outside of the territorial jurisdiction of their residence is a personal one, and will be waived if not claimed at the proper time; it is based upon sound public policy and the furtherance of the due administration of justice, and is, in a sense, the privilege of the court, and, if it should be held that by virtue of the provisions of section 2999, Code of 1930, an appearance to assert the privilege is a waiver thereof, the privilege would be destroyed entirely. The immunity from service of process while attending court outside of the territorial jurisdiction of the residence of suitors is of common-law origin, and is well established, both in England and in most jurisdictions in this country, and it could only be repealed by the express provisions of a statute. Section 2999 does not expressly repeal the exemption. It relates to the acquisition of jurisdiction of the person, and not to what shall be done with him after jurisdiction is obtained. The immunity, when asserted, extends further than mere exemption from service of process; it

shields one from being sued and litigating the controversy in the jurisdiction where he is exempt from service, and in effect deprives the court of jurisdiction to proceed with the cause. In enacting the above statute, we do not think the legislature intended, by the general language used, to abolish a rule founded in the necessities of due administration of justice, and, when such immunity exists and is properly asserted in a cause, the benefit of the exemption should be preserved by abating the suit. In considering a similar statute, the court so held in the case of Murray v. Wilcox, 122 Iowa, 188, 97 N. W. 1087, 64 L. R. A. 534, 101 Am. St. Rep. 263.

It follows from the views herein expressed that the suggestion of error will be sustained, and the judgment of the court below affirmed.

Affirmed.