Mary Frances **EASTERLING**, Plaintiff,

v.

**VOLKSWAGEN OF AMERICA, INC.,** and **International Auto Sales & Service, Inc., Defendants.**

**Civ. A. No. 2360.**

United States District Court
S. D. Mississippi,
Hattiesburg Division.

Nov. 21, 1969.

Toxey H. Smith, Jr., Wiggins, Miss., for plaintiff.

Moran M. Pope, Jr., Simrall, Aultman & Pope, Hattiesburg, Miss., for defendant, Volkswagen of America, Inc.

W. Swan Yerger, Heidelberg, Woodliff & Franks, Jackson, Miss., for defendant, International Auto Sales & Service, Inc.

## MEMORANDUM OPINION ON MOTIONS TO DISMISS FOR LACK OF JURISDICTION

NIXON, District Judge.

This suit was filed in the Circuit Court of Forrest County, Mississippi by Plaintiff, Mary Frances Easterling, against Volkswagen of America, Inc., International Auto Sales & Services, Inc., successor to the Willard E. Robertson Corporation, Steadman Motor Company, Inc. and Does I–X. In her suit, plaintiff, an adult resident citizen of the State of Mississippi, sought damages from the defendants for alleged serious personal injuries and property damages sustained by plaintiff, the wife of the title owner of one 1960 Volkswagen automobile which while being operated by her, allegedly "rolled over" due to its "wantonly, recklessly, carelessly, unlawfully and wrongfully," being designed, processed, assembled, constructed, manufactured and marketed. More specifically, it is charged that the rear suspension system changed the camber of the rear wheels while the vehicle was in motion, causing instability and increasing its inherent tendency to turn over; that it is markedly unsafe and unstable on curves, turns, dips, bumps and uneven surfaces due to the frequent and immediate camber changes; that the rear engine mount on the rear independent system increases and aggravates the basic instability of the Volkswagen; that the wheel rims and tire designs are so negligently designed, constructed, assembled and manufactured as to render it unable to resist head unseating during camber changes and tire sideloading thus compounding its basic inherent instability. Furthermore, plaintiff alleges that this

Volkswagen, which turned over causing her to be injured on December 31, 1965 in Forrest County, Mississippi, was the type instrumentality likely to place life and limb in peril or to be dangerous if negligently and improperly designed, assembled, manufactured, tested, inspected, leased, distributed, sold and delivered to the general public, including plaintiff, for transportation purposes. Plaintiff's suit is based upon both breach of warranty and negligence.

The Volkswagen in question was imported by the defendant, Volkswagen of America, Inc., hereinafter referred to as "VWA" into the United States after its purchase from the manufacturer in Germany. VWA then sells the imported Volkswagens and parts thereof to fourteen regional distributors (wholesalers) including the defendant, International Auto Sales & Service, Inc., hereinafter referred to as "International", which acquire these products from VWA ex dock at Atlantic, Pacific, Gulf of Mexico and Great Lake ports of entry. In turn, the distributors then sell these Volkswagen products to authorized dealers (retailers) appointed by them. The defendant, International, is the regional distributor for the region which includes the State of Mississippi.

Plaintiff, with the permission of the Circuit Court, voluntarily nonsuited her case without prejudice as to the defendant, Steadman Motor Company, Inc., a Mississippi corporation, and the identity of the defendants, Does I–X, was never revealed in the amended pleadings and thus of course no service was had upon them and they have vanished from this case as mysteriously as they appeared. Thereupon the remaining defendants, VWA and International, who, respectively, had previously filed a Motion to Dismiss for Lack of Jurisdiction and a Motion for Time to Plead and/or to Specially Appear, properly removed this case to this Court.

Both of the remaining defendants, VWA and International, have in this Court filed Motions to Dismiss for Lack of Jurisdiction, supported by affidavits attached thereto, which Motions are resisted by the plaintiff who filed no counteraffidavits but offered testimony of Webb Weathers, Vice President and Sales Manager of Steadman Motor Company, Inc., Hattiesburg, Mississippi. In her amended Declaration, plaintiff contends that both remaining defendants were and are doing business in the State of Mississippi and are thereby subject to service of process within this State, which allegation is denied by both defendants, who also allege that this Court has no in personam jurisdiction over either under any provisions of Mississippi law, including Section 5345, the "doing business" statute [1] or under Section 1437, Miss.Code, the "Long Arm Statute" [2] and consequently both defend-

---

1. "Any corporation claiming existence under the laws of any other state or of any other country foreign to the United States, *found doing business in this state,* shall be subject to suit here to the same extent that corporations of this state are, whether the cause of action accrued in this state or not.

2. "(a) Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this State as to doing business herein, who shall make a contract with a resident of this State to be performed in whole or in part by any party in this State, or who shall commit a tort in whole or in part in this State against a resident of this State, or who shall do any busi-

ness or perform any character of work or service in this State, shall by such act or acts be deemed to be doing business in Mississippi. Such act or acts shall be deemed equivalent to the appointment by such nonresident of the Secretary of State of the State of Mississippi, or his successor or successors in office, to be the true and lawful attorney or agent of such nonresident upon whom all lawful *process may be served in any actions or* proceedings accrued or accruing from such act or acts, or arising from or growing out of such contract or tort, or as an incident thereto, by any such nonresident or his, their, or its agent, servant or employee. The doing of such business or the engaging in any such work or service in this State, or the making of such contract, or the committing of such tort

ants have now filed their motions to Dismiss pursuant to Rule 12(b), Federal Rules of Civil Procedure.

■ The first question to which this Court addresses itself is whether it should decide if the defendants are amenable to process within this State under the provisions of Section 1437 of the Miss.Code, the "Long Arm Statute" due to the fact plaintiff has not attempted service of process upon the Secretary of State as contemplated and provided therein but has merely requested and obtained service upon the former defendant, Steadman Motor Company, Inc., the alleged agent of the two defendants, under the provisions of Section 1866 of the Miss.Code. Plaintiff contends that this Court's decision in this regard would be premature since no question under Section 1437 is now before the Court, but admits in her Memorandum Brief filed in opposition to the defendants' Motions to Dismiss that process at this time on the defendant VWA is "ineffective as to the Defendant under Section 1866, Miss.Code, Ann.". If the Court agreed with plaintiff's contention in this regard, it would be unnecessary to further discuss VWA's Motion to Dismiss inasmuch as plaintiff concedes that there is no effective process whatsoever on this defendant. However, plaintiff's contention is without merit in view of the fact that the Motions to Dismiss filed by defendants challenge the territorial jurisdiction of this Court on the ground that these defendants are not doing business in Mississippi. All of the evidence on these Motions presented by affidavit and testimony relates to the entire question of in personam or territorial jurisdiction. Furthermore, although this defendant had not been served with any process under Section 1437 at the time of the hearing of these Motions, service of process on VWA through service on the Secretary of State under the provisions of 1437 has subsequently been attempted. An additional Motion to Dismiss for lack of jurisdiction was then filed by this defendant. Plaintiff further seemingly argues that this Court need not decide whether the defendants are doing business within this State inasmuch as they are properly before this Court through service of process upon their alleged agent within the State of Mississippi, namely Steadman Motor Company, Inc., a Mississippi corporation. The Court agrees with the Movants that this argument actually begs the question, because unless a corporation is found to be doing business within the State of Mississippi within the meaning of Section 5345 process upon it cannot be effected under Sections 1866 or 5346 of the Miss.Code of 1942, Rec. In Alabama, Tennessee and the Northern Railroad Company et al, v. Howell, 244 Miss. 157, 141 So.2d 242 (1962) the Mississippi Supreme Court, in considering the effect and meaning of Section 1866 as it relates to foreign corporations stated:

"Whether the corporation was doing business within the state, and whether the person served was an authorized agent, are questions vital to the jurisdiction of the court. * * * This statute presupposes a doing of busi-

in this State, shall be deemed to be a signification of such nonresident's agreement that any process against it which is so served upon the Secretary of State shall be of the same legal force and effect as if served on the nonresident at its principal place of business in the state or country where it is incorporated and according to the law of that state or country.

(b) All civil actions for the recovery of damages brought against a nonresident of the State of Mississippi may be commenced in the county in which the ac-

tion accrued or where the plaintiff then resides or is domiciled, except as otherwise provided by law. Service of process may be had in any county of the State where the defendants, or any of them, may be found, except when elsewhere provided by law for service upon the Secretary of State.

(c) The provisions of this act as they apply to an accrual of a cause of action will be in full force and effect as to any such accrual if the cause of action accrued either before or after passage of this act."

ness in Mississippi. * * * If a foreign corporation is not doing business in Mississippi, is it suable in this State?"

The Mississippi Court then states, quoting from Arnett et al. v. Carol C. & Fred R. Smith, Inc., et al., 165 Miss. 53, 145 So. 638:

"By virtue of the said Section 5345, foreign corporations are subject to suit in this state only when 'found doing business in the state,' and therefore as against the appellant corporation the circuit court of Lee county was without territorial jurisdiction of the cause of action."

In the *Alabama, Tennessee case* the Court further held that the jurisdiction conferred upon courts by Section 5345 only embraces foreign corporations doing business in the State of Mississippi. Thus Sections 1866, 5345 and 5346 must be read together and this reading leads to the inescapable conclusion that effective process under all of these statutes presupposes a factual determination that the foreign corporation is doing business in the State of Mississippi. Likewise, Section 1437, the "Long Arm Statute," which plaintiff initially states is not applicable here because no service was attempted upon the Secretary of State, although service has been attempted subsequent to the Hearing on this matter, must also, under the circumstances, be read together with Section 5345 in a situation where no authorized agent of the foreign corporation can be found in the State.

It is necessary therefore for this Court to determine whether the defendant corporations were "doing business" within the State of Mississippi, within the meaning of Sections 1437 and 5345 of the Miss.Code, because if they were not, then no process statute, including sections 1866, 5346 or 1437, confers in personam or territorial jurisdiction of this Court over them.

The next question which this Court must decide is whether the defendant International, by filing its "Mo-tion for Time to Plead and/or to Specially Appear" in the Circuit Court of Forrest County, Mississippi on April 3, 1969, thereby waived service of process and made a general appearance herein. The general rule is that one who makes an appearance in a cause to move for an extension of time in which to plead is deemed to have made a "general appearance" and therefore waived his right to question the jurisdiction of the Court. 5 Am.Jur.2d, Appearances, § 25, p. 499. However, where the Motion for Extension of Time is made by special appearance and is solely for the purpose of enabling the defendant to have sufficient time in which to decide whether to plead or file a Motion to Quash Service of Process, the Courts have held that the defendant does not waive his right to question jurisdiction. These rules are discussed in 5 Am.Jur.2d, Appearances, § 25, p. 499:

"The general rule is that a defendant who appears in the first instance in a cause and moves for extension of time to plead is deemed to have made a general appearance. It is also generally held that an agreement or stipulation extending time to plead constitutes a general appearance. Where, however, the motion for extension of time is made by a special appearance denominated as such, and is for the purpose of enabling the defendant to have time in which to decide whether to plead or to move to quash service, the appearance is not general, and the objection to the jurisdiction is not waived. Moreover, an appearance to move for extension of time to plead, denominated special, and coupled with an objection to the jurisdiction, the motion for extension to have effect only if the objection is overruled, has been held not to be the equivalent of a general appearance so as to waive the objection to the jurisdiction."

It is therefore necessary to carefully examine the wording of the motion filed by International to determine whether it comes within the general rule or the exception thereto, that is, whether

it constituted a general appearance or a special appearance. The first unnumbered paragraph of this motion reads as follows:

> "COMES NOW the Defendant, INTERNATIONAL AUTO SALES AND SERVICES, INC., and, without admitting the validity or effect of attempted or purported service upon it, and *for special and limited purposes hereinafter recited,* respectfully moves the Court for thirty (30) days in which to plead, answer, and demur, if required by law, *and/or to specially appear herein,* and in support hereof respectfully assigns the following: * * *." (Emphasis supplied.)

Then in Paragraph 2 the following language appears:

> "2. Neither the said Bob Steadman nor Steadman Motor Company, Inc. are Agent or Agents for Process of this Defendant, *which is not doing business in the State of Mississippi and has not subjected itself to the jurisdiction of this Court and does not intend to so subject itself to such jurisdiction hereby* * * * and because of all of which foregoing matters this Defendant is entitled to and request thirty (30) days in which to plead, answer, and demur, if required by law, *and/or to specially appear herein for the purpose of attacking jurisdiction upon it and the purported or alleged or attempted service of process upon it* as above described." (Emphasis supplied.)

The above wording of this Motion leaves no doubt that the Defendant International was appearing specially for the sole and limited purpose of obtaining additional time within which to determine the manner in which it should proceed, that is, whether it should enter a further special appearance for the purpose of attacking the jurisdiction of the Court or file some other pleading. Thus, this did not constitute a general appearance and waiver of its right to raise the question of jurisdiction at this time.

Plaintiff further contends that the appearance made by the defendant International did not constitute a "special appearance" in view of Section 1881, Miss.Code 1942, Rec., which provides that:

> "Where the summons or citation, or the service thereof, is quashed on motion of the defendant, the case may be continued for the term, but defendant shall be deemed to have entered his appearance to the succeeding term of the court."

This argument is clearly refuted by the Mississippi Supreme Court opinion in Mladinich v. Kohn, 250 Miss. 138, 164 So.2d 785 (1964), wherein the Court, in discussing the meaning of Section 1881 in its effect on a nonresident defendant's right to make a special appearance to contest jurisdiction, stated the following:

> "The manifest purpose of section 1881 was to provide that, where there is a defective process or defective service of process, a defendant's appearance to quash it constitutes the entry by him of a general appearance. On its face the statute has nothing to do with the entirely different question of the jurisdiction in personam of a Mississippi court over a nonresident individual or corporation. It pertains solely to defects in process or service, or lack of them. It does not purport to deny a nonresident defendant a right to appear for the purpose of contesting the court's jurisdiction over his person. Yet with considerable justification, from obiter dicta in several decisions of this Court, it has often been assumed, without examination, that section 1881 denies a defendant an appearance to contest jurisdiction over his person, and that if he appeared for that purpose, he entered a general appearance and waived the jurisdictional issue. See Note, Special Appearance in Mississippi, 19 Miss.L.J. 59 (1947). Accordingly, appellant here contends that, even though the circuit court originally had no jurisdiction over Kohn, his special

appearance by motion to dismiss constituted a general appearance for all purposes. We do not agree.

"The statute does not preclude a special appearance to raise jurisdiction of the person. Moreover, the controlling decisions of this Court, interpreting and applying section 1881, recognize, we think, the right of a nonresident to make a special appearance to contest the in personam jurisdiction of a Mississippi Court." 164 So.2d 785 at 791.

Thus, the Defendant International had the right to plead and/or specially appear for the purpose of attacking jurisdiction and did not, by requesting additional time in which to do so, enter a general appearance and waive its right to challenge territorial jurisdiction over it at this time.

We now come to the question on the merits of the Motion filed by the two defendants, that is, whether this Court has in personam or territorial jurisdiction over the defendants or either, and if it does, whether effective process has been had upon them; also, in the alternative, whether process on International should be quashed since it was not had upon the Secretary of State as required by section 1437 Miss.Code, but rather, was had upon Steadman Motor Company, Inc., the alleged agent of this Defendant. The following facts, existing at the time of the filing of this suit, and the attempted service, are undisputed and are as follows:

The Defendant VWA is a corporation organized and existing under the laws of the State of New Jersey, having its principal place of business located at Englewood Cliffs, New Jersey. It imports Volkswagen vehicles and parts into the United States after purchasing them from the manufacturer in Germany. It then sells these vehicles and parts to fourteen regional distributors (wholesalers) who acquire Volkswagen products from VWA ex dock at Atlantic, Pacific, Gulf of Mexico and Great Lakes ports of entry. The distributors then sell these Volkswagen products to authorized dealers (retailers) appointed by the distributors.

The distributor for the region which includes the State of Mississippi is the Defendant International, a Louisiana corporation, domiciled and existing under the laws of the State of Louisiana, with its principal place of business in New Orleans, Louisiana.

Orders for any Volkswagen products from the distributors are received and accepted by VWA at its office in Englewood Cliffs, New Jersey, and orders for Volkswagen Products by authorized dealers are received and accepted by the distributors, including International, at their respective offices. VWA does not know nor has it ever sold or shipped any Volkswagen products to dealers in the State of Mississippi, but sales and shipments are made by International, which transacts business on its behalf and for its own account and not as an agent or otherwise for or on behalf of VWA. VWA did not in the instant case sell or ship the Volkswagen in question into Mississippi nor transact any business whatsoever of any kind therein. On the contrary, this automobile involved in this accident was originally purchased by the defendant International from the Defendant VWA and was sold by International to the Willard E. Robertson Corporation, a Volkswagen dealer in New Orleans, Louisiana and thereafter plaintiff's husband acquired this automobile either from Dr. Piazza or some third party. Neither defendant entered into a contract with plaintiff or plaintiff's husband concerning this automobile, nor has either performed any repair maintenance or other type of work thereon.

Neither of the defendants has been authorized to do business in the State of Mississippi, has ever applied for authority to do business in the State of Mississippi, nor appointed a resident agent for service of process therein.

Likewise, neither of the two defendants has ever had or maintained in the State of Mississippi any telephone number, bank account, or office, warehouse

or factory or any other place of business of any kind, nature or description whatsoever, and the defendant VWA has never carried on any continuous or systematic part of its business within the State of Mississippi. Neither controls nor owns any property, real or personal, tangible or intangible, located in or related to the State of Mississippi, nor has either paid any real estate tax, personal property tax or income tax in the State of Mississippi nor maintained or kept any corporate books or records nor advertised its services therein.

All sales made by VWA are paid for by its distributors in Englewood Cliffs, New Jersey and all vehicles and parts shipped to Mississippi dealers are paid for by them to International in New Orleans, Louisiana. International sells Volkswagen automobiles and parts to dealers in Mississippi and other states within its region and has salesmen and other personnel visit dealers in Mississippi. Two of these employees reside in Mississippi but perform services in other states as well as Mississippi. They have no authority to receive and accept orders, all of which must be forwarded to International's home office in New Orleans.

VWA has not entered into any contract with any Mississippi dealer, including Steadman Motor Company, Inc., or with plaintiff, her husband or any one else relative to the sale of Volkswagens or other products, whereas International has entered into an agreement with Steadman Motor Company, Inc., a Mississippi corporation organized and existing under the laws of the State of Mississippi with its principal place of business at 1421 Pine Street, Hattiesburg, Mississippi where it is engaged in the business of retailing Volkswagen products. This agreement, which is dated January 1, 1965 has been admitted in evidence as Exhibit P–1 in connection with the testimony of Webb Weathers, Vice President and Sales Manager of Steadman Motors, who was called by plaintiff as a witness in opposition to these Motions to Dismiss.

In the absence of Mississippi jurisprudence defining the specific measurement of the Mississippi "Long Arm" statute and the definition of "doing business" within the State, this Court would probably hold, based upon the recent decision of Eyerly Aircraft v. Killain, 414 F.2d 591 (C.A. 5, 1969), that it would have jurisdiction over the defendant VWA, although it is possible that the facts therein would be distinguished from the facts herein inasmuch as Eyerly Aircraft manufactured the defective product causing the injury therein, whereas in the instant case the defendant VWA was not the manufacturer of the Volkswagen in question but purchased it from its manufacturer in Germany. In *Eyerly Aircraft* plaintiff filed suit, sounding in tort, against the defendant, Eyerly, as a result of serious injuries sustained in a fall from an amusement ride in Dallas, Texas due to an alleged defective ride known as the Rock-O-Plane manufactured by Eyerly in Oregon approximately 20 years prior to plaintiff's injury and which indirectly peregrinated to Texas through interstate commerce having been sold to an amusement company in Fargo, North Dakota. The latter company toured numerous states with Stanley Shows. The Court of Appeals for the Fifth Circuit held that Eyerly contemplated that the ride would ambulate from state to state throughout the nation and would eventually tour Texas or certainly could have anticipated this, knowing that it would not be kept in a fixed location. Similarly, VWA in the present case could have contemplated that there are citizens in the State of Mississippi, who are "reformed gasoholics" through their purchase of Volkswagens, which the Court judicially notices are used in great numbers in the State of Mississippi, as well as other states, and should reasonably be expected to move from state to state in interstate commerce. The Court of Appeals, relying upon the leading case of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057, and other cases cited in

its opinion, held that Eyerly was subject to the territorial jurisdiction of the State of Texas because the use of its products in the ordinary course of commerce is sufficient contact to justify the requirement that Eyerly defend therein inasmuch as it elected to distribute its wares to independent wholesalers instead of through its own corporate apparatus so that it is only very indirectly responsible for the product reaching the injured consumer, despite the fact that the injury resulted from a defect in its equipment which was not shipped directly into Texas. The Court held that the unrelated business contacts plus the introduction of the ride into interstate commerce was sufficient to support Texas in personam jurisdiction over Eyerly Aircraft and that this does not result in any constitutional violation or denial of any constitutional right to Eyerly. The Court went on to state that the present trend is to hold that a corporation is answerable where it introduces its products into the stream of interstate commerce if it had reason to know or expect that its product would be brought into the State where the injury occurred; that is, where a defendant does business of such a volume or with such a pattern of product distribution that he should reasonably anticipate that his product may be ultimately used in any state, he has done the act required for the exercise of jurisdiction by the state where the injured usually resides and cannot deny the substantial interest of the injured person's state in providing a convenient forum for its citizens [citing Keckler v. Brookwood Country Club, 248 F.Supp. 645, 648–649 (U.S.D.C.N.D.Ill. 1965)]. The Court in Eyerly further stated that it did not mean to imply that the commission of a single tort without further contacts in the State would not be sufficient to satisfy due process, but to the contrary, where a nonresident corporation engages in a single isolated transaction in a state and a tort claim arises out of that activity, the state may assume jurisdiction over the nonresident corporation without contravening due process [citing Elkhart Engineering Corp. v. Dornier Werke, 343 F.2d 861 (5th Cir. 1965); Etzler v. Dille & McGuire Mfg. Co., 249 F.Supp. 1 (U.S.D. C.W.D.Va.1965)].

■ Therefore, this Court is of the opinion that both of the defendants herein have sufficient contacts with Mississippi to satisfy due process. However, it is now necessary to do as Judge Goldberg stated in his opinion in Eyerly, that is, take the specific measurements of Mississippi law to see if the "Long Arm" reaches as far as the constitution permits. In construing a state "Long Arm" statute, a federal court in a diversity case is required under the doctrine of Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, to give the statute the same construction as does the highest court of that state. Eyerly Aircraft v. Killain, 414 F.2d at page 17, footnote 9; see also Walker v. Savell, 335 F.2d 536, 540 (5th Cir. 1964).

■ Each case which raises an in personam or territorial jurisdictional question must be decided upon its own peculiar facts. Jarrard Motors, Inc. v. Jackson Auto & Supply Co., 237 Miss. 660, 115 So.2d 309 (1959); Republic-Transcon Industries, Inc. v. Templeton, 253 Miss. 132, 175 So.2d 185 (1965).

■ It is first necessary to examine Section 1437 of the Mississippi Code, both prior and subsequent to its amendment which became effective on July 1, 1964, and Mississippi Supreme Court decisions construing and applying this statute which controls the acquisition of jurisdiction over nonresident defendants, including foreign corporations, in the State of Mississippi and which as amended is also referred to as the "Long Arm" statute. Also, 1437 must be read in conjunction with Section 5345 of the Miss.Code of 1942, Rec. which specifically deals with jurisdiction over foreign corporations "doing business" in the State of Mississippi.

Prior to its amendment in 1964, Section 1437 contained no provision for the

acquisition of jurisdiction over nonresident defendants in cases where the commission of a single tort or execution of a single contract was the only contact which a nonresident had with the State of Mississippi. During that era the acquisition of jurisdiction rested primarily on whether the nonresident who had not qualified to do business in Mississippi and had not appointed a resident agent for service of process therein, was found to be "doing business or performing any character of service or work in this State." It was necessary to scrutinize the nature and extent of the particular defendant's activity to determine whether it was "doing business" within the meaning of this statute, and the only limitations placed on the reach of this statute were that the defendant must have certain "minimal contacts" with the State and the assumption of jurisdiction must not offend "traditional notions of fair play and substantial justice." See Davis-Wood Lumber Co. v. Ladner, 210 Miss. 863, 50 So.2d 615 (1951). An excellent discussion of the history of this jurisdictional prerequisite as construed by the Courts is found in the case of Walker v. Savell, 335 F.2d 536, (5th Cir. 1964). In *Walker* the Court considered and discussed the leading case of Lee v. Memphis Publishing Co., 195 Miss. 264, 14 So.2d 351, 152 A.L.R. 1428 and four other important subsequent cases decided by the Supreme Court of Mississippi, namely Davis-Wood Lumber Co. v. Ladner, *supra*; Jarrard Motors, Inc. v. Jackson Auto & Supply, *supra*; Livestock Services, Inc. v. American Cyanimid, 244 Miss. 531, 142 So.2d 210 (1962); and Century Brick Co. v. Carroll, 247 Miss. 514, 153 So.2d 683 (1963), in order to determine what, if any, gloss had been put upon the Mississippi Court's opinion in Lee v. Memphis Publishing Co., *supra*, by the decision of the United States Supreme Court in the International Shoe Case, *supra*. The Court in *Walker* concluded that the Mississippi Supreme Court had not in any of these cases decided to supercede its own announced requirements by the more modern or liberal trend discussed in the United States Supreme Court's decisions in *International Shoe* and McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223.

Immediately after the 1964 amendment to Section 1437 became effective, enlarging the scope thereof, the Mississippi Supreme Court handed down its landmark decision in Mladinich v. Kohn, 250 Miss. 138, 164 So.2d 785 (1964). The Court referred to the amendment which had been enacted but had not yet become effective and utilized this decision to lay down the ground rules for the application of the amended and broadened statute. See Miss. Defense Lawyers' Journal, "How Long the Arm", Vol. 4, p. 45 and 27 A.L.R.3rd, pp. 463–465. In this case the Court held that in order to subject a nonresident to jurisdiction in the State of Mississippi, in addition to the requirements that it have certain "minimal contacts" with the forum state and that assumption of jurisdiction would not offend "traditional notions of fair play and substantial justice," that there were three other basic factors which must coincide, and these are: "(1) the nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction in the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation." Effective July 1, 1964 Mississippi's Arm apparently became longer by the addition of two other bases for acquiring jurisdiction of a foreign corporation or entity, namely: (1) if it committed a tort in the state against a resident of the state, or (2) made a contract with the state resident, some part of

which was to be performed in the state. Although the above criteria were laid down in Mladinich v. Kohn, prior to the effective date of the amendment to section 1437, they have been retained as necessary and essential prerequisites to the acquisition of jurisdiction since that amendment and up to this date, as is apparent by reading subsequent decisions of the Mississippi Supreme Court. See Hilbun v. California-Western States Life Insurance Company, 210 So.2d 307 (Miss.1968); Breckenridge v. Time, Inc., 253 Miss. 835, 179 So.2d 781 (1965); Republic-Transco Industries, Inc. v. Templeton, *supra*.

Either the jurisdictional arm of section 1437 as amended is not as long as it appears in its sleeve or the Mississippi Supreme Court has shortened it by judicial surgery to a length shorter than the permissible constitutional reach. In view of the fact that it is not necessary for this Court in this diversity case to engage in "rational divination" on this question because of the clear decisions of the Mississippi Supreme Court establishing the above prerequisites thereto, it now devolves upon this Court to apply the facts as it finds them to the law, in order to resolve the jurisdictional question.

■■■■■ The motion of VWA will be considered first. Initially, it is noted that the plaintiff in the first sentence of her memorandum brief concedes that process on this defendant is ineffective under Section 1866 of the Miss.Code, Rec. and that no service of process has been attempted under any other provision of Mississippi law, including Section 1437, but contends, without avail, that consideration of the question of process under section 1437 would be improperly premature and that the Court should refrain from deciding this question. Plaintiff's position is that whether this defendant is doing business in the State of Mississippi is not in issue because plaintiff obtained service of process upon this defendant's "agent". As stated above, this Court finds this argument without merit because it begs

the question, inasmuch as there can be no effective service of process upon a corporation that is not amenable to process under the requisite provisions of Mississippi law; that is, unless a foreign corporation is qualified to do business in the State of Mississippi or has appointed a resident agent for service of process, no territorial jurisdiction over it may be acquired unless the prerequisites laid down in Mladinich v. Kohn, are present and coincide. Furthermore, in light of plaintiff's subsequent attempted service of process under the provisions of 1437, consideration of the "doing business" concept is properly before the Court. However, this Court unhesitatingly also finds that there is a complete absence of any evidence that Steadman Motor Company, Inc. was at the time of the attempted service of process or is now the "agent" of VWA within the meaning of the Mississippi Process statutes. First Jackson Securities Corp. v. B. F. Goodrich Co., 253 Miss. 519, 176 So.2d 272 (1965). In the First Jackson Securities Corp. case the Court stated that it must determine if the defendant's employee was its clerk or agent to be included in the statutory requirements of section 1866 stating that an agent is one who stands in the shoes of his principal: that he is his principal's alter ego. The Court quoted from 2 C.J.S. Agency § 1, p. 1024 which further defines the term "agent". Plaintiff does not allege in her amended declaration that Steadman Motor Company, Inc. is an agent or agent for process of this defendant but merely bases its jurisdictional allegation on the fact that this defendant is "doing business" in Mississippi. There is no semblance of evidence that Steadman or anyone else is the agent or agent for service of process of VWA. This defendant did not enter into any contract with anyone to perform any services or do any work within the State of Mississippi, and as stated previously, did no business and performed no acts within this State which would constitute its "doing business" herein. It did not deliver any

automobiles to anyone within the State of Mississippi, entered into no contract with anyone herein, including Steadman Motors and International, maintained no corporate records or corporate office herein, had no telephone listing, had no agents or employees of any kind in Mississippi and had no "minimum contact" with anyone therein. Even if it is charged with committing a tort by virtue of the alleged defective condition of the Volkswagen automobile which it purchased from the manufacturer in Germany and sold and delivered to International in New Orleans, then certainly this cause of action did not arise from nor was it connected with any purposeful act or transaction, if any there be, within this State. For this Court to assume jurisdiction over the defendant VWA would offend "traditional notions of fair play and substantial justice" in view of the complete absence of any activity of VWA in the State of Mississippi. The only evidence introduced by the plaintiff in opposition to the Motion of VWA was the testimony of the witness Weathers. In response to a question by the Court, this witness stated: "All of our work is with International and whatever we do is with the distributor, International."

Therefore, this Court is of the opinion that the Motion to Dismiss for Lack of Jurisdiction filed by the Defendant VWA is meritorious and will be sustained.

Turning next to the Motion of the Defendant International to Dismiss for Lack of Jurisdiction, or in the alternative, to Quash Process, this Court is faced with a more difficult question.

Plaintiff contends that the Defendant International has two agents residing within the State of Mississippi in view of the testimony of the witness Weathers, Vice President and Sales Manager of Steadman Motor Co., Inc., who testified for plaintiff, under subpoena, in opposition to the motions filed by the defendants. These two representatives, David Lansing and Ellis Bufkin, reside in Jackson and Hattiesburg, Mississippi, respectively, and are field representatives of International who visit each department of Steadman Motors periodically, usually once or twice a month, to give advice and assistance to Steadman in its operation as a dealer or retailer of Volkswagen Products in Hattiesburg. These field representatives who are employees of International, do not work exclusively in Mississippi but operate in several states throughout the mid-south. The fact that International has two employees living within the State of Mississippi performing part of their work therein certainly does not constitute evidence that it is "doing business" within the State, particularly in view of the fact that the Mississippi Supreme Court has held that foreign corporations with many more employees than this number and who performed extensive services within this State were not "doing business" within the State of Mississippi for jurisdictional purposes. See Lee v. Memphis Publishing Company, 195 Miss. 264, 14 So.2d 351, 152 A.L.R. 1428; Livestock Services, Inc. v. American Cyanimid Co., 244 Miss. 531, 142 So.2d 210; Walker v. Savell, 335 F.2d 536 (5th Cir. 1964). However, the witness, Weathers, did testify that these field representatives called on International once or twice a month and did inspect Steadman Motors' Volkswagens periodically, and thus, this evidence may and should be considered in conjunction with all other evidence in determining whether International is subject to the territorial jurisdiction of this Court within the State of Mississippi.

In order to determine whether International is "doing business" in Mississippi under such circumstances as to vest in this Court jurisdiction over it, the Court must look closely to the contract entered into between the defendant distributor, International, and its dealer-retailer, Steadman Motors, because this contract is all important on the issue now being considered. See Jarrard Motors, Inc. v. Jackson Auto & Supply Co., Inc. and Lott, *supra*. In *Jarrard*, the Mississippi Supreme Court briefly

set out the provisions of the contract entered into between Jarrard Motors, Inc., distributor for a foreign made automobile, domiciled in Pensacola, Florida and its dealer-retailer, Jackson Auto & Supply Co., Inc., a Mississippi corporation domiciled in Jackson, Mississippi and A. F. Lott, a resident of the City of Jackson. The Supreme Court of Mississippi, based upon the various provisions of that contract, found that it was clearly evident that Jarrard possessed almost absolute control over the method and manner of doing business by the dealer, and thus was doing business in the State of Mississippi in the sale and distribution of automobiles and automobile parts as provided in the contract which created the relationship of distributor and dealer in the territory covered by the contract, despite the fact that all sales were made in Pensacola where all payments were made for the automobiles purchased by the dealer from the distributor, much like the situation existing in the instant case.

The contract between International and Steadman was introduced into evidence by plaintiff as Exhibit P-1 during the testimony of the witness, Weathers. The terms and provisions of this contract will now be set out and summarized as briefly as possible. It provides that there shall be no voluntary change in the beneficial ownership or executive power or responsibility of the dealer without the prior written consent of the distributor; in requires the dealer to maintain and employ in connection with its business a minimum fixed net working capital and a minimum owner's equity as well as a stated line or lines of credit in a certain aggregate amount with banks or financial institutions approved by the distributor; the distributor must approve the location of the dealer's business premises including its salesroom, workshop, body and paint shop and used car facilities; dealer shall maintain a minimum inventory required by the distributor and a certain volume of necessary parts required by the distributor as well as a certain stated minimum number of Volkswagen automobiles; the parties waive the right to trial by jury and consent to the jurisdiction of the courts of Louisiana and of the Federal courts sitting in New Orleans, and the dealer agrees that any and all process directed to it in any litigation between it and distributor may be served upon it outside Louisiana with the same force and effect as if the service had been made therein; the dealer shall give due consideration to all applicable and reasonable directives and suggestions of the distributors; the dealer shall maintain and employ in its business such organizational procedures suggested by the distributor from time to time; the dealer shall employ personnel in such capacities and in such number as reasonably may be specified from time to time by the distributor and shall cause these personnel to be trained in special training courses offered from time to time by the distributor; the dealer shall operate his business during and for not less than customary business hours for trade in the area; dealer shall not engage in any automobile leasing or rental business at his premises without the prior written consent of distributor; dealer shall display conspicuously his VW signs in such number and in such locations and in such manner as the distributor may reasonably require; dealer shall exclusively use stationery and business forms conforming to directives and suggestions of the distributor; dealer shall comply fully with all directives and suggestions of distributor relating to standards, practices and facilities for used car sales, and under such trade marks or trade names required; dealer shall advertise VW products only in accordance with directives and suggestions of the distributor and shall spend a certain minimum amount of money for regional and local advertising of its products; dealer shall participate in exhibitions, fairs, rallies or similar events in accordance with the reasonable directives and suggestions of distributor; dealer shall engage in promotional activities specified from time to time by the

distributor in directives and suggestions; dealer shall perform its sales which shall be in the manner described by the distributor and shall be evaluated by the distributor; in the installation and operation of dealer's salesroom, the use of bookkeeping forms, employment of a qualified sales manager and used car manager, salesmen, bookkeepers and other sales personnel shall all be in accordance with the standards prescribed by the distributor from time to time; the dealer shall comply with the requests of the distributor to make changes or refrain from making changes in VW products; the dealer shall hold in trust all payments whether in money or in kind, by transfer of used automobiles or otherwise, which it may receive on account of orders for subsequent delivery of VW products; in the installation and operation of dealer's parts department it shall comply with the standards that the distributor shall from time to time define with respect to employment of a qualified parts manager, use of parts and accessory sales and bookkeeping forms prescribed by the distributor; dealer shall conform with all instructions and directives of the distributor in connection with its work shop operation; the dealer shall furnish its orders for VW parts to distributor on forms supplied by the distributor at such time or times as the distributor reasonably may require; title to VW products sold shall remain in the distributor, and distributor shall have the right to retake and resell the VW products sold until the distributor shall have collected actual cash in the full amount of the purchase price therefor except where the invoice may show a sale on credit; the distributor shall not be under any liability whatsoever to the dealer for failure to deliver, or for delay in making delivery, pursuant to orders of dealer accepted by distributor unless through willful or grossly negligent conduct of the distributor; dealer shall require and at all times maintain at least such minimum inventory of VW products supplied to it by distributor and parts expressly approved by VW supplied to it by the distributor in accordance with the directives of the distributor; dealer shall use such business machines and other office equipment as required by distributor and keep accurate and current books with accounting practices reasonably satisfactory to distributor; dealer shall deliver or mail to distributor on or before the tenth day of each calendar month a financial and operating statement in duplicate and shall furnish distributor a balance sheet and profit and loss statement at a certain specified time; dealer shall furnish to distributor on the forms prescribed by distributor complete accurate reports in duplicate of dealer's sales and stocks of new and used VW automobiles and of other used automobiles and furnish distributor other reports and financial statements as distributor may require; distributor shall have the right at any time to bring about forthwith termination of this agreement for various causes such was in Article 12 of said agreement. This agreement contains many more provisions and requirements imposed upon the dealer, all of which together with all of the above stated requirements make it even more clearly evident in this case than in *Jarrard* that International, the distributor, possessed almost absolute control over the method and manner of doing business by the dealer, Steadman Motors, which leads to the inescapable conclusion that International was and is doing business in the State of Mississippi within the meaning of the law.

*Jarrard* cited and discussed the case of McGee v. International Life Insurance Company, *supra*, decided by the United States Supreme Court which recognized the increasing trend of the Courts to hold a nonresident liable locally under the interlocking activities of enterprises in doing business in the various states. The Court in *McGee* said:

"Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresi-

dents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity."

Having determined that the first criterion for conferring jurisdiction over nonresident corporations laid down in Mladinich v. Kohn, *supra*, has been met, that is, that the nonresident defendant foreign corporation, International, "has purposefully done some act or consummated some transaction in the forum state" and thus has done business in the State of Mississippi, it is next necessary to determine whether the second required prerequisite has been satisfied, namely, whether the cause of action herein has "arisen from or is connected with such act or transaction." The answer to this question is in the negative, inasmuch as the automobile in question was not delivered by International to its dealer, Steadman, within the State of Mississippi nor was it sold by International to plaintiff or her husband in this state or in any other state. If, the plaintiff's cause of action arose out of these contacts or out of International's "doing business" in this State, e.g. if plaintiff's injuries had resulted from the defect in the Volkswagen shipped or sold directly to Steadman by International which ultimately reached plaintiff or her husband or any purchaser or seller in the line of sale after leaving Steadman, this second requirement would unquestionably be satisfied, but such is not the case. Instead, this Volkswagen in question was sold by International to its dealer, Willard E. Robertson Corporation in New Orleans, who sold it

to a purchaser and subsequently down the line of commerce it was purchased or acquired by plaintiff's husband. See Eyerly Aircraft v. Killain et al., *supra*. Thus International is not amenable to process by the Courts of this State, State or Federal, since the present action does not arise out of, accrue from, and is not connected with the "business" conducted by International through Steadman in the State of Mississippi, as required by Section 1437 of the Miss. Code as construed in Mladinich v. Kohn. In other words, this cause of action did not arise out of or accrue from and is not connected with the delivery by International to any dealer, including Steadman, within the State of Mississippi and thus it may not be subjected to suit in the courts within this State under the Mladinich doctrine, despite the fact that in the absence of this requirement, due process would be satisfied by the above activities or "contacts" of International within the State of Mississippi. Eyerly Aircraft v. Killain, *supra*.

Parenthetically, if all of the requirements of Mladinich had been met, this Court would still not have jurisdiction over International inasmuch as service upon it could be acquired only through service on the Secretary of State in accordance with the provisions of Section 1437. Mladinich v. Kohn, *supra*; Jarrard v. Jackson Auto & Supply Co., Inc., *supra*. Despite the fact that this Court finds that International is "doing business" within this State by virtue of its contacts and business relationship with Steadman, nevertheless, Steadman is not the agent of the defendant International and thus jurisdiction of International may not be acquired through service on Steadman Motors. Although not controlling, Article 2, Para. (5) found on page 2 of the above Agreement is relevant on the question of agency. It reads as follows:

"Dealer shall transact all business pursuant to this Agreement on its own behalf and for its own account. Accordingly, Dealer has no power or authority whatsoever to act as agent

or otherwise for account or on behalf of VW, VWoA or Distributor. Dealer shall refrain from any attempt to assume or create obligations for, or to act in any other manner as purported agent or purportedly on account or on behalf of VW, VWoA or Distributor."

█ The Dealer, Steadman Motors, had no authority to act for or on behalf of its Distributor, International, and was not entrusted with International's business. In addition, it was not a business representative of International, and could not bring about, modify, affect, accept performance of, or terminate contractual obligations between International and third persons. See Black's Dictionary, 4th Ed. at p. 85; First Jackson Securities Corp. v. B. F. Goodrich Co., Inc., *supra*. In addition, plaintiff did not allege anywhere in her pleadings that Steadman is International's agent nor has plaintiff produced any evidence to support any such contention that Steadman had the power to act for or in the place of International by authority from it, that it had the power to bind International in any respect or that it was employed to bring about business relations between International and third persons. Certainly, the general rule is that where a foreign corporation and a local dealer enter into a sales agreement which does no more than obligate the former to sell to the latter and the latter to buy from the former, this does not give rise to any agency relationship which would allow the dealer to accept service of process as agent for the foreign corporation. See 36 Am. Jur.2d, Foreign Corporations, sec. 573, p. 573 which states the following:

"A contract between a foreign corporation and its local dealer, which merely obligates the former to sell to the latter, and the latter to purchase from the former for resale on his own account, clearly is only a sales agreement, and does not give rise to any agency relation, and the service of process upon such a dealer is accordingly not valid as a service upon the corporation. Similarly, a person is not an agent within the meaning of statutes authorizing service of process upon foreign corporations, where the relation of the person served to the corporation is that of wholesaler and manufacturer, doing business under a contract by which the manufacturer agrees to sell his goods only to such wholesaler, who in turn agrees to buy them exclusively from the manufacturer."

Thus, under section 1866 of the Miss. Code Steadman Motors was not an authorized agent to accept service of process for and on behalf of the defendant International and service on Steadman's President, does not constitute service of process upon International.

Therefore, based upon the foregoing, the Court finds and is of the opinion that the Motion of the Defendant International to Dismiss plaintiff's suit against it for lack of territorial jurisdiction is meritorious and will be sustained.

The Defendants shall present their Orders in conformance with the foregoing opinion to the Court within the time and the manner prescribed by the Rules of this Court.